**TITAN GROUP, INC.**

v.

**ANNE ARUNDEL COUNTY, DEPARTMENT OF PUBLIC WORKS,**
State of Maryland.

**Civ. No. Y-84-236.**

United States District Court,
D. Maryland.

May 31, 1984.

Richard J. Magid, Baltimore, Md., and Robert S. Peckar, Hackensack, N.J., for plaintiff.

Stephen R. Beard, Annapolis, Md., and Douglas G. Worrall, Baltimore, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

This dispute arises out of construction work on the Cox Creek Wastewater Treatment Plant. The plaintiff, a Delaware corporation headquartered in New Jersey, was the contractor on the project, and the defendant, a Maryland county, is the operator of the facility. A number of summary judgment motions on particular issues have been filed, are pending and ripe for resolution, and require prompt resolution.

The first matter for this Court to consider is whether a series of letters between the plaintiff and the defendant established a "written agreement to arbitrate," so that the Court should grant the plaintiff's motion for summary judgment on the issue of arbitrability and should stay the proceedings with regard to other claims. Having reviewed the submissions of the parties, the Court has determined that an enforceable agreement to arbitrate was created, which raises the second matter to be considered: whether the defendant's claim that the plaintiff's damage claims are barred by the statute of limitations should be considered by this Court or by the arbitrator. The Court has also concluded that matter should be considered by the arbitrator.

These issues will be discussed in turn.

## AGREEMENT TO ARBITRATE

The plaintiff argues that the defendant must be forced to submit their dispute on this matter to arbitration under an agreement to arbitrate which was created by a series of correspondence between the two parties. The defendant argues that no such agreement was created because, first, there was no "meeting of the minds" with regard to the purported agreement, and, second, the author of the letter which the plaintiff construes as the "offer" necessary to form the contract had no authority to

make such an offer on the defendant's behalf.

It is undisputed that, on August 24, 1983, the director of the Department of Public Utilities for Anne Arundel County, Thomas H. Neel, wrote a letter to the plaintiff's chief executive officer, Robert James Frankel, complaining about the difficulty the parties had in resolving their dispute and containing the following language, which plaintiff interprets as constituting an "offer":

> It is for this reason that, unless Titan makes a responsive counter-offer to our settlement offer of June 20, 1983, Anne Arundel County believes that the most appropriate and expeditious way to resolve this dispute is to submit it to binding arbitration. We propose that such arbitration be conducted in accordance with the rules of the American Arbitration Association, amended to permit full discovery by both parties.

Although the language in this letter discussing the County's belief that arbitration would be "appropriate and expeditious" could not be construed as an offer, the language specifically proposing arbitration is an offer, and the defendant has admitted as much in its brief (Opposition to Plaintiff's Motion for Summary Judgment, p. 3).

The response to this offer—which the plaintiff construes as an acceptance— was a letter dated September 7, 1983, from Frankel to Neel. This letter also complains about the parties' "regrettable" inability to reach a settlement, and proceeded:

> Accordingly, your proposal that the matter be determined by arbitration before the American Arbitration Association, Commercial Arbitration Tribunal is hereby accepted by Titan subject, however, to the following conditions:
>
> (1) That each party be permitted full discovery.
>
> (2) That the arbitration be held in a neutral location where there are adequate facilities such as the City of Philadelphia, the City of New York, or the City of Washington, D.C.

If the foregoing coincides with your understanding, please signify your assent by signing the duplicate original hereby furnished for that purpose.

The only other relevant correspondence on this issue was a letter from Neel to Frankel dated October 6, 1983, purporting to withdraw the previous offer to submit to arbitration.

> Please be advised that, upon the advice of the County Solicitor, we withdraw the proposal to submit to binding arbitration.

Based on this correspondence, the Court must determine whether the County and Titan Group had entered into a written agreement to submit the matter to arbitration, which would be enforceable, because of the diversity jurisdiction of the parties, under 9 U.S.C. § 2:

> ... an agreement in writing to submit to arbitration an existing controversy arising out of such a contract [one which "evidences" interstate commerce] ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The question of whether an enforceable agreement to arbitrate was created is a question of federal substantive law. *See* citation of *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 406–07 (2d Cir.1959) in *In re Mercury Construction Corp.*, 656 F.2d 933, 938, n. 7 (4th Cir.1981):

> We think it is reasonably clear that the Congress intended by the Arbitration Act to create a new body of federal substantive law affecting the validity and interpretation of arbitration agreements.

As stated above, the defendant first argues that the exchange of correspondence indicates no "meeting of the minds," since the purported "acceptance" contains the additional conditions relating to "full discovery" and to the location of proceedings in a "neutral location" with "adequate facilities." It is basic hornbook contract law that an "acceptance" which conditions acceptance on certain requirements not specified in the original offer is

not an acceptance at all, but rather a rejection of the original offer and a counter-offer. 1 *Williston on Contracts*, § 73 at 238–39 (1957). However, restating in an acceptance any conditions made either expressly or by implication in the offer does not transform an acceptance into a counteroffer.

> Sometimes an acceptor from abundance of caution inserts a condition in his acceptance which merely expresses what would be implied in fact or in law from the offer. As such a condition involves no qualification of the acceptor's assent to the terms of the offer, a contract is not precluded. 1 *Williston on Contracts*, § 78 at 257–58 (1957).

The first "condition" listed on the acceptance—that "each party be permitted full discovery"—cannot be considered a change from the terms of the offer since the offer contained the same condition. The second condition deals with the location of the arbitration proceedings, required to be in a "neutral location" with "adequate facilities."

The plaintiff argues that this statement is not really a condition, but merely an effort to proceed, as required by the Arbitration Association rules, in an attempt to agree on the location of the arbitration proceedings. However, the express language of the acceptance does make the agreement to arbitrate "subject" to the "condition" that the "arbitration be held in a neutral location."

However, the question still remains whether this condition is one which was "implied in fact or in law" by the offer. The offer expressly provided that the proposed arbitration would be conducted "in accordance with the rules of the American Arbitration Association." These rules provide specific procedures followed by arbitrators in determining where arbitration proceedings will be conducted. American Arbitration Association, Commercial Arbitration Rules (1982):

> 11. Fixing the Locale
>
> The parties may mutually agree on the locale where the arbitration is to be held.

> If the locale is not designated within seven days from the date of filing the Demand or Submission, the AAA [American Arbitration Association] shall have the power to determine the locale. Its decision shall be final and binding. If any party requests that the hearing be held in a specific locale and the other party files no objection thereto within seven days after notice of the request, the locale shall be the one requested.

This provision has been interpreted as follows:

> Usually, when parties refer to an agency's arbitration rules, and the place where the arbitration is to be held is not designated in the agreement, it is deemed that the parties have left the designation of the locale to the agency administering the proceedings. Parties will submit their arguments for and against a specific locality, taking into consideration the availability of witnesses and documents. Domke, *Commercial Arbitration*, § 16.02 at 236 (1984).

In other words, in the absence of any language in the arbitration agreement addressing the issue of the location of the proceedings, the arbitrator would decide where the site would be. Where the place of arbitration is required to be "neutral," the arbitrator would still be required to designate a location (in the absence of prior agreement of the parties).

Not much has been written to document the methods used by arbitrators in selecting locations for proceedings. However, it would appear that the arbitrator would choose a city, convenient to the parties and to their witnesses, which is the site of one of the regional offices of the AAA.

> An arbitration agency will designate the location for an arbitration only when the parties themselves did not agree on one either in the arbitration clause or later after the dispute arose. The American Arbitration Association will usually select one of the cities where it maintains a regional office as the site for the arbitration. *Id.* at 237.

The arbitrators designate the time and place of the hearing and notify the parties. In practice, however, the arbitrators usually consult with the parties and arrange a time and place convenient to both arbitrators and parties. American Arbitration Association, *The Practice of Commercial Arbitration*, 45 (1928).

Because the project under dispute here was located in Anne Arundel County, near Washington, D.C., and because the closest regional offices of the American Arbitration Association are located in Washington, D.C., Philadelphia, Pa., and in Somerset, New Jersey (*see* ABA Special Committee on Alternative Dispute Resolution, Dispute Resolution Program, Appendix B (1983)), it seems highly likely that the arbitration proceedings would have taken place—without any designation by either party—in one of the "neutral" locations which the plaintiff requested, *i.e.*, Washington, D.C. Furthermore, because neutrality is—not surprisingly—one of the hallmarks of the rules of the American Arbitration Association (*see* Rule 12), the rules imply that the arbitration agency would select a "neutral" location if either of the parties objected to one selected by its opponent.

■ Consequently, the phrase in the acceptance here conditioning agreement on a requirement that the arbitration be conducted in a "neutral location" was a requirement already reflected in the reference in the offer's stipulation that arbitration would be conducted in accordance with the rules of the AAA. The use of this phrase in the acceptance constituted surplusage, and did not constitute a "condition" which had not already been implied, by the offer, "in law or in fact." The defendant offered, in writing, to submit to arbitration in accordance with the rules of the American Arbitration Association, and the plaintiff, in writing, agreed to do so.

■ The defendant next maintains that the Director of the Department of Public Utilities did not have the authority to make an agreement on behalf of the county to submit a dispute to arbitration. The defendant cites a case in which the Maryland Court of Appeals held that those who deal with County officials must "take notice of the limits of the powers both of the municipality and of those who assume to act as its agents and officers." *Gontrum v. Baltimore*, 182 Md. 370, 376, 35 A.2d 128 (1943). The Anne Arundel County Chapter provision (§ 405) which is cited by the defendant, however, indicates that the Anne Arundel County Executive has the power to delegate responsibility to sign contracts on behalf of the county. An Anne Arundel County Code provision requiring that contracts for capital improvements be approved by the County solicitor and executed by the County Executive or his delegate is inapposite here since the agreement (to submit to arbitration) was not "for a capital improvement." Anne Arundel County Code, § 1–314(b). Thus, the question becomes whether the County Executive cloaked the Director of Public Utilities with the apparent authority to submit the matter to binding arbitration. It is apparent that he did. As noted by the plaintiff, inquiries addressed to the county's legal department were referred over to Neel (*see* his letter of August 24, 1983), which would indicate that Neel had been cloaked with the authority to deal with the dispute. *See* Restatement (2d) *Agency*, § 159 Comment f, at 377 (1958):

> When a principal refers others to an agent, or in fact to any person, for information, such person becomes the spokesman for the principal to them, with apparent authority to make statements upon the subject matter as to which reference is made, and the principal is bound by such apparently authorized statements or promises.

Accordingly, Neel had the authority to deal with the dispute, and, therefore, to make the offer to submit the dispute to arbitration. Because this offer was effectively accepted by the plaintiff, a binding agreement to arbitrate was created, and the defendant will be held to it.

STATUTE OF LIMITATIONS

■ The defendant claims that the plaintiff should be barred from pursuing its

claims because of the Maryland Statute of Limitations with regard to suits against municipal governments. The plaintiff correctly argues that this is an issue which should be considered by the arbitrator, rather than the Court. Repeated decisions of the Second Circuit, and other circuits, have held that a federal court should consider an allegation that a claim is time-barred, with respect to a claim brought under the Federal Arbitration Act, only when the delay pertains either to the making of the arbitration agreement or to the failure to enforce it.

> ... only if the alleged laches pertains to the making of the arbitration agreement or the failure, neglect or refusal to comply therewith—the two issues which the court is required to decide under the Federal Arbitration Act—is the court free to dispose of the laches issue. In all other cases, laches must be decided by arbitration. *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 66 (2d Cir. 1983).

*See also Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 645 (7th Cir.1981) ("... if the agreement provides for arbitration, the only issues open for the consideration of a federal court concern the 'making of the agreement to arbitrate' itself.").

Accordingly, the defendant's argument that the plaintiff's claim is time-barred should be considered, at least in the first instance, by the arbitrator.

### ORDER

In accordance with the Memorandum attached hereto, it is this 31st day of May, 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiff's motion for summary judgment on the issue of arbitration BE, and the same IS, hereby GRANTED;

2. That the defendant submit the dispute with the plaintiff over the Cox Creek Wastewater Treatment Plant to binding arbitration, pursuant to the rules of the American Arbitration Association;

3. That all proceedings in the pending civil action BE, and the same ARE, hereby STAYED pending resolution of such arbitration; and

4. That a copy of this Memorandum and Order be sent to all parties.