606 So.2d 681 (1992)
William D. VICTOR and Jeanette M. Victor, Appellants,
v.
DEAN WITTER REYNOLDS, INC., Appellee.
No. 92-191.
District Court of Appeal of Florida, Fifth District.
September 25, 1992.
*682 Robert Dyer and Neal J. Blaher of Allen, Dyer, Doppelt, Franjola & Milbrath, P.A., Orlando, for appellants.
Peter J. Aldrich and Glenn D. Kelley of Broome, Kelley & Aldrich, P.A., West Palm Beach, for appellee.
GRIFFIN, Judge.
This is an appeal of a non-final order temporarily enjoining an arbitration proceeding governed by the Federal Arbitration Act (the "FAA").[1] We reverse.
Appellants William D. Victor and Jeanette M. Victor (the "Victors") were clients of Dean Witter Reynolds, Inc. ("Dean Witter") in its Eustis, Florida office. The Victors opened their account in 1981. Their "Securities Account Agreement" with Dean Witter ("customer agreement"), which was executed August 30, 1982, provided as follows:
Arbitration of Controversies. Any controversy between DWR and me arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining of either the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as I may elect. If I do not make such election by registered mail addressed to DWR at DWR's main office within five (5) days after receipt of notification from DWR requesting such election, then I authorize DWR to make such election on my behalf. Any arbitration hereunder shall be before at lease [sic] three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.
Governing Law. This agreement and its enforcement shall be governed by the laws of the State of New York and its provisions shall be continuous; shall cover individually and collectively all accounts which I may open or re-open with DWR, and shall enure to the benefit of DWR's present organization, and any successor organization, without regard to any change or changes at any time in the personnel thereof, for any cause whatsoever, and of the assigns of DWR's present organization, and of the assigns of any successor organization, and shall be binding upon me and/or my estate, executors, administrators and assigns.
In 1983, the Victors made a $10,000 investment in an oil limited partnership marketed by Dean Witter. They contend this investment, which they made based on the recommendation of their broker at Dean Witter, was incompatible with their investment objectives. They allege that in 1986 when the distributions they had been receiving dropped sharply, they questioned their Dean Witter broker and were told their distributions would increase when oil prices went up. They were also told for the first time that the partnership could not be sold. The Victors assert that although oil prices rose sharply in 1990 following the invasion of Kuwait, the "value" of the partnership remained at its previous level and "Mr. Victor realized at this point that the disclosures made to him prior to 1990 had not been truthful."
On May 28, 1991, the Victors filed a statement of claim with the American Arbitration Association ("AAA"), seeking arbitration *683 of their dispute with Dean Witter over this investment. The Victors' complaint for expedited arbitration included five legal theories: (1) violation of federal and state securities laws; (2) breach of contract; (3) breach of fiduciary duty; (4) misrepresentation; and (5) negligence and/or gross negligence.
After several months of procedural wrangling between Dean Witter and the Victors, principally over the number of arbitrators, the matter was scheduled to be arbitrated on January 10, 1992. On January 3, 1992, Dean Witter filed an action for declaratory and injunctive relief in Lake County circuit court, seeking a judicial determination that the Victors' claims were barred by the statute of limitations and a permanent injunction barring arbitration. Accompanying the complaint was an emergency motion for a temporary injunction staying the upcoming arbitration. The lower court granted Dean Witter's motion for a temporary injunction. The Victors correctly contend that entry of this injunction was error.
This case is governed by the FAA since it involves a securities transaction in interstate commerce. Rosen v. Shearson Lehman Bros., Inc., 534 So.2d 1185, 1186 (Fla. 3d DCA 1988), rev. denied, 544 So.2d 200 (Fla. 1989). Federal courts applying the FAA have almost uniformly held that, assuming an arbitration clause is sufficiently broad to permit arbitration of the statute of limitations issue, the question whether an action is time-barred due to a state statute of limitations is a question for the arbitrator, not the courts. See, e.g., Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 121 (2d Cir.1991); Hanes Corp. v. Millard, 531 F.2d 585 (D.C. Cir.1976); Titan Group, Inc. v. Anne Arundel County, Dept. of Public Works, 588 F. Supp. 938 (D.C.Md.), aff'd, 749 F.2d 32 (4th Cir.1984).[2] The arbitration provision at issue here is broad and, standing alone, would plainly embrace the statute of limitations issue.[3]
Dean Witter has claimed an "absolute right" to have the court determine the statute of limitations issue based on a recent opinion of the Fourth District Court of Appeal, Estate of Vernon v. Shearson, Lehman Bros., Inc., 587 So.2d 1169 (Fla. 4th DCA 1991).[4] We agree with the decision reached in Vernon, although we might disagree with dicta contained in the opinion.[5] In Vernon, the issue was not whether *684 the arbitrable claim was barred by expiration of a contractual deadline, a statute of limitations or laches; rather, the issue was whether a brokerage firm seeking recovery of unpaid account balances from the estate of a deceased customer was precluded from asserting a claim against the customer's estate by virtue of its failure to timely file a claim as required by the probate code. Shearson had argued in that case that its agreement with the decedent to arbitrate disputes somehow avoided the nonclaim provision in the probate code. We agree with the Vernon court that the state court did have jurisdiction to prevent any prosecution of a claim against an estate which under Florida's probate code had been extinguished because it was not timely filed. This nonclaim issue was unrelated to the transaction between the deceased and Shearson and would have had no place in arbitration. An arbitration agreement, even under the FAA, should not affect the state court's power to enforce the provisions of its probate code.
It is true that the Vernon court went on to say that it is the court which should decide whether an arbitration claim has been barred by the statute of limitations, even in the context of the Federal Arbitration Act. According to the opinion, all of the cases relied upon by Shearson, authorizing the arbitrator to rule on statutes of limitations cases, involved contractual time bars, not statutory time bars.[6] Federal courts hold, however, that where the Federal Arbitration Act applies, any limitations defense  whether stemming from the arbitration agreement, arbitration association rules or state statute  should be determined by the arbitrator. Wagoner, 944 F.2d at 121. Indeed, Vernon is the only case (state or federal) cited by Dean Witter for the proposition that, in cases governed by the FAA, the courts, not the arbitrator, should decide statute of limitations issues.[7]
Dean Witter also argues that federal arbitration law is inapplicable where, as here, an arbitration agreement contains a state choice of law provision which permits resolution of statute of limitations issues in court prior to arbitration. It relies on Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). In Volt, based on a choice of law provision in an arbitration agreement, the Supreme Court refused to disturb a California Court of Appeals decision enforcing a state statutory stay of arbitration pending resolution of lawsuits against third parties not subject to arbitration. Volt held that the FAA does not preempt the field of arbitration so long as the state law does not require judicial resolution of claims that the parties agreed to arbitrate.
The Dean Witter customer agreement provides that New York law will apply to the "agreement and its enforcement." Section 7502(b) of the New York Civil Practice Laws and Rules ("CPLR"), on which Dean Witter relies, contains alternative procedures for determination of statutes of limitation issues in arbitration cases:
(b) Limitation of Time. If, at the time that a demand for arbitration was made or a notice of intention to arbitrate was *685 served, the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration upon application to the court as provided in section 7503 [providing for a trial of the limitations issue] or subdivision (b) of section 7511 [setting forth the standard grounds for vacating an award]. The failure to assert such bar by such application shall not preclude its assertion before the arbitrators, who may, in their sole discretion, apply or not apply the bar. Except as provided in subdivision (b) of section 7511, such exercise of discretion by the arbitrators shall not be subject to review by a court on an application to confirm, vacate or modify the award.
We conclude that Volt does not extend as far as this New York statute. In Volt, arbitration was not displaced; it was merely deferred until the third party suits were decided. The New York statute, on the other hand, impermissibly strays into an area preempted by the FAA by permitting one party to avoid arbitration of an issue covered by an arbitration agreement. Volt, 489 U.S. at 477-478, 109 S.Ct. at 1255.
Volt also highlights another weakness in appellee's position. In Volt, the United States Supreme Court explained:
[T]he federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate.
* * * * * *
[I]t does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms.
489 U.S. at 476-479, 109 S.Ct. at 1254-1255. The threshold consideration is what the Victors and Dean Witter agreed would be arbitrable, and in making that determination, it is necessary to harmonize all provisions of the agreement. The quoted statute shows that, in New York, the statute of limitations can be raised in either forum at the option of the defendant. By agreement, however, Dean Witter stipulated that any controversy would be arbitrated; thus, by agreement, its option to take the statute of limitations issue into court became limited.
We also find merit in appellant's contention that, even if Dean Witter did have a contractual or statutory right to seek a judicial determination concerning application of the statute of limitations, the right was waived.[8] Dean Witter participated for seven months in the arbitration process, initially by insisting that the arbitration be held, as contractually required, by a panel of three arbitrators rather than a single arbitrator. Once that issue was resolved, by letter dated December 2, 1991, AAA scheduled the matter for hearing on January 10, 1992. Dean Witter apparently also participated in the selection of the arbitration panel. It was not until December 31, 1991 that Dean Witter's counsel, by letter, sought to delay the arbitration based on scheduling conflicts. In that same letter Dean Witter, for the first time, asserted that the claim was time barred and that the arbitrators had no right to determine that issue. When AAA denied Dean Witter's request for a postponement of the hearing, Dean Witter filed the declaratory and injunctive relief action below.
Although we have found no relevant cases involving waiver under section 7502 of the New York statutes, section 7503(b) does provide that a party who participates in arbitration may not seek a stay *686 of arbitration based on a statute of limitations defense.[9] Also, the language of section 7502 itself suggests the application for a judicial determination should be made at the time a demand for arbitration is made. Finally, there is no reason why the currently existing case law relating to waiver in the arbitration context should not apply here. See, e.g., Rosen, 534 So.2d at 1186-1187. Just as a party who has a right to arbitration can waive that right by participating in a judicial proceeding, so can a party having a right to a judicial determination of an arbitrable issue waive that right by participating in arbitration. Cf. C.D. Anderson & Co., Inc. v. Lemos, 832 F.2d 1097 (9th Cir.1987). In fact, because federal law favors arbitration over litigation for resolution of private litigation, the burden to establish waiver may be less. See Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1025 (11th Cir.1982). Dean Witter's argument that it could not be held to have waived its objection to the arbitrators hearing the statute of limitations issue because it had no duty to file a responsive pleading under AAA's arbitration rules, misses the point. Waiver arose not merely from Dean Witter's nonobjecting participation in the arbitration proceeding to the brink of the final hearing; it arose from the failure to promptly seek a judicial determination of the statute of limitations issue after arbitration had been demanded.
Dean Witter's most passionate policy argument in favor of a judicial determination of the statute of limitations issue is that if statutes of limitations are left to arbitrators to decide, they "might as well not exist." They warn that arbitrators are wont to ignore valid statute of limitations defenses:
Unfortunately, arbitrators are not frequently steeped in the law and cannot always be expected to follow its precepts. Arbitrators could sustain an aged or otherwise unlawful claim based entirely upon a sympathy factor. Under those circumstances, the defendant would be without remedy since mistakes of law are generally insufficient grounds to vacate an arbitration award.[10]
We recognize that there is substance to Dean Witter's complaint; if arbitrators fail or refuse to apply a statute of limitations to bar a claim the arbitrators decide is meritorious, the defending party (in this case, the broker) is largely without recourse.[11] Dean Witter's problem, however, is of its own making. For its own purposes, Dean Witter chose to draft customer agreements requiring customers to submit to arbitration of "any controversy." It is not surprising that, in circumstances like those presented in this case, Dean Witter would now prefer the procedural and substantive advantages of a judicial forum for the prompt and dispassionate application of such dispositive legal defenses as the statute of limitations. But Dean Witter elected a different, nonjudicial forum for resolution of "any controversy" with its customers. Having provided for arbitration in its customer agreement, Dean Witter will have to trust the arbitrators to do their jobs properly.
REVERSED with instructions to VACATE the temporary injunction.
DAUKSCH and PETERSON, JJ., concur.
NOTES
[1] 9 U.S.C.A. §§ 1-11.
[2] Some courts will apply the rule even though the statute appears on its face to bar the action, Reconstruction Finance Corp. v. Harrisons & Crosfield, Ltd., 204 F.2d 366 (2d Cir.), cert. denied, 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953), while others suggest that a limited exception to this rule may permit the court to decide the issue of timeliness where the arbitrator could not reasonably find that the grievance was timely. United Paperworkers Int'l v. ITT Rayonier, Inc., 752 F. Supp. 427 (M.D.Fla. 1990).
[3] Moreover, in construing arbitration agreements under the FAA, every doubt is resolved in favor of arbitration. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-942, 74 L.Ed.2d 765 (1983).
[4] Vernon in turn relied on a previous 2 to 1 decision from the same court, Anstis Ornstein Assocs., Architects and Planners, Inc. v. Palm Beach County, 554 So.2d 18 (Fla. 4th DCA 1989). The Anstis court relied on Union County School Dist. No. 1 v. Valley Inland Pacific Constructors, Inc., 652 P.2d 349 (Or. App. 1982), which held that whether a claim is barred by the statute of limitations should be decided by the court where the agreement provided that arbitration could not be demanded after the statute had run on the claim and where it was clear, as a matter of law, that the applicable statute had run. The court also relied on Transamerica Ins. Co. v. Lumberman's Cas. Ins. Co., 77 A.D.2d 5, 432 N.Y.S.2d 269 (1980), appeal denied, 53 N.Y.2d 602, 439 N.Y.S.2d 1026, 421 N.E.2d 853 (1981), which found that the question of whether the applicable statute of limitations had run was to be decided by the court, but this was based on a state statute which specifically permitted the court to resolve this issue. Finally, Allstate Ins. Co. v. Orlando, 262 Cal. App.2d 858, 69 Cal. Rptr. 702 (1968), involved application of a state uninsured motorist statute which itself contained a statute of limitations. Both Union County and Orlando involved questions of arbitrability. Neither Anstis nor the cases on which it relied involved the FAA.
[5] The Vernon court observed that the court, not arbitrators, should decide whether an arbitration claim is barred by the statute of limitations. 587 So.2d at 1171. The statute of limitations is an affirmative defense and there seems to be no good reason for conducting a trial in court to determine factually whether it prevents recovery before going forward with arbitration. The statute of limitations does not go to arbitrability; it relates to whether an arbitrable claim is so stale that it will not be enforced. Unlike the Vernon issue, the statute of limitations issue is intimately bound up with the same facts that underlie the claim itself. Who said what to whom? Who knew what and when? Who did what and when? This issue seems perfectly suited for arbitration. Why have a trial in court on the issue and then duplicate the same factual presentation on liability in arbitration? The effect of the Vernon and Anstis opinions, if broadly read, is that arbitrators are not permitted to decide statute of limitations issues. We doubt this is true (or should be true) under Florida law; it certainly is not true under the FAA.
[6] Two of these cases, however, County of Durham v. Richards & Associates, Inc., 742 F.2d 811 (4th Cir.1984), and In re Mercury Constr. Corp., 656 F.2d 933 (4th Cir.1981), aff'd sub nom. Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) merely involved a contractual provision that any claim was subject to the state statute of limitations.
[7] Our decision in this case is also consistent with the recent decision of this court in City of Mt. Dora v. Central Florida Police Benevolent Ass'n, 600 So.2d 520 (Fla. 5th DCA 1992) and acknowledges the reasons expressed in that opinion why such multiple forums defeat the key purposes of arbitration. Id. at 521-522.
[8] It appears from the dissent in Anstis that a waiver argument was raised and (evidently) rejected by the majority. Anstis differs from the present case because of that court's conclusion that the statute of limitations was not an arbitrable issue, thus no waiver was possible. This reasoning would have no application under New York law where the choice of forum was optional to defendant, and was therefore waivable.
[9] It does not appear that the twenty-day bar in section 7503 applies in this case; it has not been mentioned by either party. "Participation" in arbitration within the meaning of section 7503(b) includes participation in the selection of the arbitrators, according to the statutory notes.
[10] Appellee's Answer Brief at p. 12.
[11] See generally C. Evan Stewart, Securities Arbitration Appeal: An Oxymoron No Longer? 79 Ky.L.J. 347 (1990-1991).