[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case represents the latest chapter in an effort by the plaintiffs to have the court order arbitration of a dispute between the parties. In Levine I, I held that because the plaintiffs chose arbitration before the NYSE a limitations question had to be decided by the court not the arbitrator and that the defendant should prevail on its limitations defense as to most accounts — the basic claim is based on the plaintiffs allegations that the defendant improperly handled investment accounts causing great loss to the plaintiffs.
The plaintiffs did not file a motion for reconsideration or an appeal of my decision in Levine I but filed this action under § 52-410
of the General Statutes. The defendant filed a motion to dismiss which I denied and fully expected at the time to be granting an order compelling arbitration at the request of the plaintiffs. The defendant, however, has now filed a Motion for Leave to file a Motion for Summary Judgment. It seeks to advance a statute of limitations defense which it argues it is entitled to have the court decide because of a choice-of-law clause in the CT Page 848 arbitration agreement which indicates the agreement and its enforcement are to be governed by New York law. New York law provides that in an action to compel arbitration the defendant can demand that any limitations defense be heard by the court prior to any order compelling arbitration. Oral argument was had and briefs were filed by the parties. The question presented is difficult. The difficulty is enhanced because two cases, one by the New York Court of Appeals, the other by the federal Supreme Court, are critical to a resolution of this case but they've only been decided within the last ten months and there's been little in the way of decisional law interpreting their appropriate relationship to each other.
1.
This is an action to compel arbitration brought pursuant to § 52-410 of the General Statutes. Section 379 of the Practice Book provides that a summary judgment motion may be filed "in any action" except for certain excluded matters none of which include § 52-410 applications. Such applications are commenced by complaint, the statute says they are to be heard at short calendar or as a privileged case or otherwise and the trial court's action can be appealed from. They certainly are "actions" by any commonly accepted definition of that word.
It can't be credibly argued that when such an application to compel arbitration is made that the defendant has no right to resist the application by arguing that under the terms of the arbitration agreement — which the application is meant to enforce it had a right to demand that a court hear a defense that as to a particular matter — here a limitations defense — the scope of arbitration was limited so that the court has to decide the issue prior to compelling arbitration. A party can only be compelled to arbitrate when it has agreed to do so. If the state gives a right to one party to have a court compel arbitration, it would seem fair and perhaps required by due process that the other party has a right to defend itself against the request by referring to the language of the same contractural agreement on which, the plaintiff bases its action.
If the defendant has a right to raise the limitations defense before the court actually orders arbitration, why not allow it to raise the defense by a motion for summary judgment or by any means appropriate to have the issue aired? The hearings on a § 52-410
application should be expedited but nothing in that compels a CT Page 849 conclusion that for some reason, unstated in the Practice Book, a summary judgment motion can't be filed as in any other "action". Motions for Summary Judgment often raise statute of limitation defenses which are decided by the courts and the defendant"s right to do so should be no different here than in any other case simply in terms of procedure.
2.
(a)
The parties entered into an arbitration agreement which contained a choice of law provision which reads as follows:
 This agreement and its enforcement shall be governed by the laws of the State of New York. This agreement shall cover individually and collectively all accounts which I may open or reopen with you and shall inure to the benefit of your successors and assigns whether by merger, consolidation or otherwise. This Agreement shall be binding upon my heirs, executors administrators, successors and assigns."
A dispute arose which is alleged to have been covered by the agreement and the plaintiffs have brought a proceeding under § 52-410
to compel the defendant to arbitrate. The defendant has filed a Motion for Leave to File a Motion for Summary Judgment. The defendant hopes thereby to raise a defense under the statute of limitations to this proceeding and have the court decide the validity of the defense to this § 52-410 action.
The arbitration agreement between the parties contains very broad language: "all controversies which may arise between us concerning any transaction or the construction, performance, or breach of this agreement between us . . . shall be determined by arbitration." And the general rule seems to be that the courts usually decide whether a claim to enforce arbitration is timely while the timeliness of the underlying claims will be decided by the arbitrator, see Avant Petroleum Inc. v. Section Arabian Inc.,696 F. Sup. 42 (S.D.N.Y., 1988), "Enforcement of Arbitration" 29 C.O.A. 231, 298 (§ 22), but see Rinker Portland Cement Co. v.Seidel, 414 So.2d 629 (Fla., 1982). CT Page 850
But the defendant argues that the arbitration agreement must be read as a whole. The broad submission language should be read along with the New York choice of law language. That language in effect limits or conditions the broad submission language, so the argument goes, because under New York law the just mentioned general rule is not followed. New York departs from this general rule as evidenced by two sections in McKinney's Consolidated Laws; of New York Vol. 713 which is entitled "Civil Practice Law and Rules." The certificate attached to this volume indicates these rules although procedural, were enacted into law by the New York legislature and are not procedural rules adopted by courts and made effective by the act of the judiciary. Section 7503 is analogous to our § 52-410 in that it authorizes a party to go to court to get an order compelling arbitration. That section refers to § 7502(b) which underlines how New York departs from the just referenced general rule in the following explicit language:
 "If, at the time that a demand for arbitration was made or a notice of intention to arbitrate was served, the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state,
a party may assert the limitation as a bar to the arbitration." (emphasis added).
The New York Court of Appeals has interpreted this explicit language as it must — a party in a § 7503 action may interpose a statute of limitations defense and if it does so the court will decide it to determine if it bars the relief sought by § 7503, SmithBarney, Harris. Uphan Co. v. Luckie, 647 N.E.2d 1308, 1313
(1995).
The arbitration agreement in Luckie had the standard broad submission language as the agreement in this case, Id. p. 1310 but that did not prevent the Court of Appeals from interpreting choice of law language in the agreement as importing New York procedure under §§ 7503 and 7502(b) into its interpretation of the contract.
The defendant would thus argue that as a matter of contract interpretation this is what the parties bargained for and a party "can be compelled to arbitrate a dispute only if, to the extent that, and the manner in which he (sic) has agreed to do so",Marsala v. Valve Corp. of America, 157 Conn. 362, 365 (1969). Under Volt Information Sciences LTD v. Board of Trustees,489 U.S. 468, 479 (1989) arbitration and the duty to do so is defined by the CT Page 851 agreement of the parties and nothing in the federal policy favoring arbitration warrants a departure from this principle.
(b)
The plaintiffs first response is to argue what is certainly generally true — statute of limitations defense are for the arbitrator to decide. In Levine I, I held NYSE Rule 603 is a substantive eligibility requirement to be decided by the court and the plaintiff's point out the obvious — the limitations defense raised here is not a substantive eligibility matter. It is also true as the plaintiffs note that Shearson Lehman Hutton Inc. v.Wagoner, 944 F.2d 114 (CA 2, 1991), Conticommunity Services v.Philipp Lion, 613 F.2d 1222 (CA 2, 1980), and Merrill LynchPierce Fenner Smith v. Shaddock, 822 F. Sup. 125 (S.D.N.Y. 1993) were extensively referred to by this court in Levine I and they all unequivocally state that a statute of limitations defense is for the arbitrators to decide. All of this is not relevant to the precise issue now before the court. I certainly did not intend in Levine I, nor would I have the power, even if I was so presumptuous, to overrule or ignore Volt Information Sciences Ltd.v. Bd. of Trustees, 489 U.S. 468, 479 (1989). Referring to this subject and some of the just cited cases, the court in Luckie noted the following at 647 N.E.2d page 1315:
 "In the aftermath of Volt, the courts have divided on whether New York's rule permitting the court to address a statute of limitations question conflicts with the compulsory arbitration provisions of the FAA and is thus preempted. . . . Those courts opting for preemption generally rely on Shearson Lehman Hutton v. Wagoner, 944 F.2d 117 (CA 2, 1991). We are not persuaded by the Wagoner court's analysis, however, which did not cite or address the significance of the previously decided Volt case and instead relied on two pre-Volt precedents which critically, lack any reference to a contractural choice of law provision. (Conticommunity Servs. v. Philipp Lion, 613 F.2d 1222, 1224-1225 (CA 2), cert. denied 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed 368
(1953). Indeed one of those cases, Conticommunity, involved the very different situation where the time limitations as CT Page 852 contained within the body of the contract — a matter for the arbitrator even under New York law (see Matter of County of Rockland (Primiano Constr. Co.) 51 N.Y.2d 1, 431 N.Y. 478, 409 N.E.2d 951, supra).
The critical point, which will be discussed later, is thatWagoner, Conticommunity etc are federal cases, Luckie is a New York case interpreting a contract and the language of that contract given the inclusion within it of a New York choice of law provision. Harmonizing that judicial activity with Volt and the FAA and its purposes are what make this a difficult and I can't avoid the difficulty by general incantations about who decides limitations defenses in the ordinary case. This isn't an ordinary case. This is a case containing a choice of law provision. I have to interpret a contract because a party can only be made to arbitrate what it agreed to arbitrate. The highest court of New York interpreted the very contract language and its effect that is now before me and then came Mastrobuono v. Shearson Lehman Hutton115 Sup. Ct. Reptr. 1212 (1995), of which more later.
The plaintiffs argue further that the defendant makes a "desperate attempt" to avoid its contractural obligation to arbitrate by saying "a New York choice of law clause requires this court to follow New York Rules of Civil Procedure." They cite the language in Baxter v. Sturm Ruger Co., 230 Conn. 335, 339 (1994) that: "It is undisputed that, as a principle of universal application, remedies and modes of procedure depend upon the lex fori." Baxter, however, was a personal injury case. Osgood v.Wilkinson, 208 N.Y.S. 802, 804 (1934) is a contract case but the whole point is that there was no choice of law provision mentioned in the contract before the Osgood court so of course the New York court held that in such a situation the law of the forum governs. Here there is a choice of law provision and the general rule is that "the law of the state chosen by the parties to govern their contractural rights and duties will be applied . . .", Restatement of Conflicts, Second, § 187 and under § 205: "The nature and extent of the rights and duties created by a contract are determined by the local law of the state selected by application of the rules of §§ 187-188."
Neither of the caveats to § 187 can be said to be true in this case. It can't be said here that New York, "the chosen state", has no substantial relationship to the parties or the transaction or that there is no other reasonable basis for the parties' choice. CT Page 853 New York commercial law is practically a lingua franca in this area.
Nor can it be said that "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue. . . ." Some arcane peculiarity of New York procedural law is not being imposed on Connecticut courts. Application of New York law here, if it were to be applied, would simply mean that a court not an arbitrator would decide the limitations question. That's what Luckie held that the language of the contract before it dictated. Pre-Luckie non-New York cases that came to a similar conclusion as the Luckie case was later to reach had no qualms about interpreting the New York choice-of-law clause even though in effect they thereby followed the same procedure as New York courts. A federal court in the Northern District of Illinois applied New York choice-of-law language to decide that courts not arbitrators decide statute of limitation issues and therefore held that it was "compelled to decide the statute of limitations issue", Chemical Futures Options Inc. v.RTC 832 F. Sup. 1188, 1194 (ND Ill, 1993), cf Seaboard Surety v.Cates, 604 So.2d 570 (Fla., 1992). Even pre-Luckie non-New York cases that arrived at a different conclusion than Luckie about the appropriate effect of the choice-of-law clause didn't base their decisions on the grounds that as courts in a non-New York Forum they were not obligated to follow a New York "procedural rule" that required limitations issues to be decided by the courts, ShearsonLehman Hutton Inc. v. Wagoner, supra, 944 F.2d at pp. 120-121,Victor v. Dean Witter Reynolds, 606 So.2d 681 (Fla., 1992).
The court then can see no reason based on a general reference to how limitations questions are ordinarily handled procedurally or based on locally applied conflict of law doctrine why it should not accept the Luckie holding as to how this contract should be interpreted. That court held that:
 "(T)he parties choice that New York law would govern `the agreement, and its enforcement'
indicates their `intention to arbitrate to the extent allowed by (this state's) law,' even if application of the state law — and an adverse ruling on a statute of limitations claim would relieve the parties of their responsibility under the contract to arbitrate" (emphasis added), 647 N.E.2d at p. CT Page 854 1313.
The choice of law provision turns us to New York law to decide the duties and obligations of the parties under this contract (see previous discussion), the highest court of that sister state has interpreted the contract language in the above quoted manner. Before addressing what to me is the difficult question of whetherLuckie leads to a result that is inimical to the purposes of the FAA and that under Mastrobuono, Luckie's enforcement of the choice-of-law clause should be federally preempted, one other preliminary matter should be dealt with. What if any is the effect of Connecticut law on the question that has to be decided by the court?
White v. Kampher, 229 Conn. 465 (1994) represents no departure from the principles set forth in Luckie as regards the contract interpretation function of a court in this type of case. White
says generally that the use of broad submission language in an arbitration agreement would require a court to hold that even the issue of arbitrability was for the arbitrator not the court. It interpreted the arbitration and negotiation clause in the contract before it as not providing for unrestricted submission, however, but for conditional submission. The court did not address the question of the arbitrability of particular disputes where there is a broad submission clause in an agreement clause in an agreement followed by a New York choice-of-law clause. That was the question before Luckie and Luckie interpreted the contract before it as providing that New York law, imported into the contract by the parties, required that limitations defenses must be decided by the court, if the defendant so chose, despite the broad submission clause that also was part of the arbitration contract. The real question before me is whether this is appropriate under Volt in light of Mastrobuono?
(c)
What then does Volt say; that case says at 489 U.S. page 478:
 . . . "the FAA does not require parties to arbitrate when they have not agreed to do so . . . nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. . . . It simply requires the courts to enforce privately negotiated agreements to CT Page 855 arbitrate, like other contracts, in accordance with the terms. . . . The act was designed `to make arbitration agreements as enforceable as other contracts but not more so."
In light of the federal policy favoring arbitration the nub of the problem becomes how does a court decide or by means of what interpretive rules does it determine what the parties agreed to? After all as Mastrobuono v. Shearson Lehman Hutton, 131 L.Ed.2d 76,84 (1995) indicates what it really comes down to is first deciding whether the arbitration contract negotiated by the parties provides that a certain mater is subject to arbitration. If the contract can be read as so providing, no state statute or decision can exclude the claim from arbitration. If the agreement of the parties excludes a matter from arbitration that would be perfectly proper under Volt. That's what Volt says and if such were not the case why did Mastrobuono spend four pages attempting to interpret the contract before it?
The New York court in Luckie has interpreted contract language similar to the contract language in this case as providing that if there is a motion to compel arbitration, the defendant can ask the court to decide any limitations defense. All things being equal that would be the contract interpretation this court would give to this agreement. But as noted the real question becomes — didMastrobuono in effect hold that the Luckie reasoning was violative of the purposes of the FAA?
In other words as a matter of contract analysis did the Luckie
court comply with the requirements of federal decisional law in this field? The federal courts have adopted a so-called "positive assurance" test which mandates that doubts in the interpretation of contract language in an arbitration agreement must be resolved in favor of arbitration; ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration,United Steelworkers of America v. Warrior Gulf Navigation Co.,363 U.S. 574, 582 (1960), Moses H. Cone Hospital v. MercuryConstruction Corp., 460 U.S. 1, 24-25 (1983). That is, a reading of Volt makes clear, see 489 U.S. at pp. 475-476, that the construction of a choice-of-law provision by a federal or state court can be set aside if it does not follow the Moses H. Cone
rule, see also Mastrobuono at 115 Sup. Ct. p. 1218. The Luckie
Court was well aware of its responsibilities under the "positive assurance" test, 647 N.E.2d at p. 1312, 1314. CT Page 856
The problem with the Volt analysis, as I believe Justice Brennan understood in his dissent, lies in reconciling its fundamental holding with the appropriate application of the "positive assurance" test. Volt basically held that enforcing state rules of arbitration "according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward", 489 U.S. at p. 479. But this permissible result is to be arrived at by courts that have an anterior responsibility to apply the "positive assurance" test in interpreting the arbitration agreement. The possibilities of circular reasoning are endless. If parties can limit the scope of arbitration by reference to state arbitration rules and whether they have done so depends on state decisional law, even if the state court, which is the state referred to in the choice of law clause, has an obligation to apply the "positive assurance" rule, what difference does it make if the state court decision favors or impedes arbitration — after all the operating principle of Volt is that the parties can limit the scope of arbitration by reference to state procedural rules.
It is true that at 489 U.S. page 476 Volt in an aside did note that the California procedural rule before it seemed to encourage arbitration.[1] But on the very same page the court appears to render the aside irrelevant when it says: "There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms. of private agreement to arbitrate."
I agree that the correctness of Luckie must be examined in terms of Mastrobuono. But in one sense Mastrobuono can be regarded as a case where the court applied the positive assurance test where the choice-of-law clause merely said that the agreement was to be governed by New York law. Here the choice-of-law clause says the agreement and its enforcement was to be governed by New York law a phrasing that Luckie was at pains to point out.
But even leaving aside the different wording of the choice-of-law clauses, the court in Mastrobuono made a remarkable comment as to the appropriate interpretation of the choice-of-law language before it. The court in footnote 4 at 115 S.Ct. page 1217 made a remark which elucidates Volt, dictates a result in the defendant's favor, and might be said to have fulfilled some of the worst fear of Justice Brennan in his Volt dissent. The court said in that footnote: CT Page 857
 "4. The dissent makes much of the similarity between this choice-of-law clause and the one in Volt, which we took to incorporate a California statute allowing a court to stay arbitration pending resolution of related litigation. In Volt, however, we did not interpret the contract de novo. Instead, we deferred to the California courts construction of its own state's law (`the interpretation of private contracts is ordinarily a question of state law, which this court does not sit to review'). In the present case, by contrast, we review a federal court's interpretation of this contract and our interpretation accords with the only decision maker arguably entitled to deference — the arbitrator . . . ." (emphasis added by court).[2]
 Luckie is a decision by New York's highest court. I believe I must accept its interpretation of this contract. I do not believe Volt or Mastrobuono dictate that the Luckie result should be federally preempted. I believe the only way to reconcile MosesH. Cone. Volt. and Mastrobuono is so say that an opinion by an appellate state court, whose law governs, that precludes arbitrability as a result of its interpretation that an arbitration agreement incorporates state arbitration rules which have that effect, will not violate federal FAA policy if there is at least an arguable basis to conclude that its interpretation of the contract language was reasonable and appropriate.
I have read and re-read Luckie and Mastrobuono and the choice-of-law language in this contract. I cannot say the Luckie
interpretation of the contractural effect of that language has no arguable basis. Therefore the defendant should have leave to file its motion for summary judgment if it has not waived that right.[3]
3.
The plaintiffs also argue that the defendant has waived its right to raise the limitations defense before the court whether or not the arbitration agreement would have permitted them to do so in this § 52-410 action. CT Page 858
Waiver is an intentional relinquishment of a right that is known, Cutlip v. Conn. Motor Vehicles Comm'r., 168 Conn. 94, 96
(1975). The plaintiffs rely on a transcript of a November 1994 hearing before the court and characterize it as establishing that both sides agreed that all legal issues to be raised were to be raised by the motion to dismiss or otherwise briefed at or around the time that that motion was filed and briefs were being submitted by both sides. That was certainly the hope of plaintiffs' counsel because from his perspective the right of his clients to arbitration had already been unnecessarily delayed. In a later hearing in December he requested defense counsel to "please indicate now what other issues" they might want to raise. He said "let's address all the issues now that need briefing."
Despite all this the defendant did not raise or allude to any statute of limitations defense. If they had done so the plaintiffs argue that that issue could have been addressed in the briefing. Since § 52-410 mandates an expedited hearing, under all the above circumstances, the plaintiffs argue it would be inappropriate and unfair to permit the defendant to raise the limitations defense by means of a motion for summary judgment at this late stage. In effect plaintiffs' counsel argues that the defendant has violated a commitment it made to him and the court.
The defendant counters by arguing that under our procedure a limitations argument cannot be raised by a motion to dismiss; the defendant had to raise the defense after I decided the motion to dismiss adversely to it in July of 1995. Section 52-410 does provide for an expedited procedure the defendant would argue but it does not permit our rules of practice to be ignored. I suppose though the parties could have briefed the issue if both had agreed to waive the ordinary procedural rules; the limitations issue after all like those raised in the motion to dismiss was a legal issue. Frankly I thought all the legal issues to be raised were to be encompassed in the motion to dismiss. If they weren't and it was represented that in any event all the issues that had to be briefed were briefed whether or not ancillary to the precise issues raised in the motion to dismiss, then waiver might be found not so much on the basis of a known waiver of a right but on an alternative waiver theory — unfair prejudice caused to the other side. That is, if the plaintiffs knew the limitations issue was going to be advanced they could have asked the court to expedite its ruling on the motion to dismiss or order a hearing on the limitations question while the motion to dismiss was pending — that motion didn't raise jurisdictional questions strictly defined and the Practice Book CT Page 859 shouldn't be a straight jacket when there is a reason to expedite certain types of hearings.
The problem is that the finding of waiver is an important matter for me — I've failed to fund it twice before in this case both under circumstances favoring the plaintiffs.
What concerns me is Attorney Cordicino's statement at the November hearing where he said there was only one other legal issue — whether one of the plaintiffs was a signatory to the arbitration agreement — that "I see causing any kind of legal issues to rise atthis stage of the proceedings." That's an odd way of putting it if you intended by your motion to dismiss to encompass any and all factual and legal defenses you might have. Also on April 24, 1995 Attorney Greenspoon for the defendant said:
 "My understanding is that once there is a ruling on the motion to dismiss this action will either be dismissed or it will not be dismissed and then we file an answer. . . ."
Attorney Willicut in ensuing comments knew precisely what Attorney Greenspoon was implying when she made these comments as is indicated by his response to this position. He emphasized that it was his understanding that all legal issues that were to be raised had been raised. At two points I interjected:
 "The Court: If I grant the motion to dismiss they are out of court. If I don't grant the motion to dismiss then we proceed like an ordinary case I suppose. I don't know what else — what are the other options."
I then said I was going to confine myself to ruling on the motion. Attorney Willicut again argued that his understanding was that there would not be a multiple motion process but the whole point of the November discussions was that all legal issues to be raised would be briefed together. Attorney Greenspoon then directed herself to Attorney Willicut's comments by saying she did not recall ever agreeing to consolidate the answer and the motion to dismiss stages of the proceedings and reiterated her understanding that if the motion to dismiss was not granted the defendant would file an answer. I have read and re-read the portion of the November 1994 transcript submitted to me and it doesn't contain sufficient grounds for me to find waiver. CT Page 860
I believe it is quite possible that counsel for the defendant may not have had in mind any other legal issues, especially the limitations defense, than those raised in their motion to dismiss at the time of the November hearing. But they did not explicitly agree to waive the right to raise other legal issues or at least they were not willing on the record to do so — what else does the "at this stage of the proceedings" language mean?
It also should be noted that the Luckie case was decided in February 1995. It cited no New York cases on the question before it and the court only referred to a handful of federal district court and two Florida cases that had ever dealt with the precise issue before the Luckie court, see 647 N.E.2d at p. 1315. This hardly has the ring of a situation where defense counsel knew about the issue all along and were saving it to delay the proceedings. The plaintiffs in a footnote to their brief say the defendant can't argue that it was the parties' intent in the contract to be bound by a New York rule that court's decide limitations issues and at the same time argue they were unaware of the rule in this case in 1994 long after the contract was signed. Frankly, I don't accept the observation. Who is meant by they? If we posit the fact that a party has a certain right that may have accrued at the time of contract formation, can we say that right really doesn't exist or it is self-contradictory to assert it if the party's lawyer didn't fully appreciate what the right was at the time an action on the contract commenced and/or only advanced it at a later stage in the case? I don't think so, it doesn't follow.
In any event in light of my finding on the waiver issue and in light of my earlier conclusions I will grant the defendant permission to file its motion for summary judgment.
Thomas Corradino, Judge.