HENRY MASSON, *et als., v.* P. H. ANDERSON and B. J. TARVER; F. H. GORDON, Executor, etc., *v.* P. H. ANDERSON and TARVER; P. H. ANDERSON *v.* HENRY MASSON, *et als.*; together with several other cases consolidated and heard with the above in the Court below.

1. CHANCERY. *Pleading and Practice. Consolidation. Effect of.* An order of consolidation has no other effect than to hear the cases consolidated at the same time, the issues remaining in the pleadings as they were before, and between the same parties, and are to be determined as if the cases had been heard separately.

2. SAME. *Same. Cross-bill. New parties in. Trustee. Beneficiaries.* Where the maker of a deed of trust, which has not been accepted by the trustee, files his answer to a bill which seeks to enjoin them from disposing of the property, this makes no issue upon which a decree can be had, the beneficiaries not being parties to the original bill, and as this is not a proper subject for a cross-bill, the beneficiaries cannot be made parties to the defendants' answer, though filed as a cross-bill for that purpose.

Cases cited: Odom *v.* Owen, 2 Baxter, 446.

Code cited: §4323.

Henry Masson, *et als., v.* P. H. Anderson and B. J. Tarver.

3. SAME. *Same. Antagonistic claims to the same bill. Effect of.* Two opposite and inconsistent claims to the same property, or opposite and inconsistent rights antagonistic to each other, cannot be affirmatively set up and maintained ·in the same bill, but the facts in this bill do not amount to such an inconsistency. It alleges substantially, that complainants are creditors of Anderson, by judgments, with executions returned *nulla bona.* In another part of the bill, they say, that in some instances they had *fi. fas.* levied on the land, and in others have had their judgments registered. But, on the other hand, they have been provided for and attempted to be made secure by the deed of trust, and that they were and are content to accept the provision thus made.

Cases cited: Coleman *v.* Pinkard, 2 Hum., 191; Shields *v.* Barrow, 17 How., 137; Danl. Ch. Pr., 384–5.

4. SAME. *Same. Abandonment of a right. What necessary to constitute.* The abandonment or waiver of a right important to parties cannot be made out by uncertain implication, but ought clearly to appear. To constitute such a waiver of a benefit, there must be a clear, unequivocal, and decisive act of the party, an act which shows a determination not to have the benefit intended.

Cases cited: Gentry, *et als., v.* Gentry, 1 Sneed, 87; Heisk's Digest. p. 1.

5. DEED OF TRUST. *What is not consumable property.* The property conveyed is not necessarily consumable in its use, the property being described in the deed as follows: All my cattle, including milk stock, sheep, hogs, stock, pork hogs, sixteen head of horses, mules and colts.

Case cited: Ross . Young, *et als.,* 5 Sneed, 629.

---

FROM WILSON.

---

Appeal from the Chancery Court. JNO. P. STEELE, Chancellor.

R. CANTREL and JORDAN and JAMES F. STOKES for Masson and others.

E. GOLLADAY for Anderson and others.

FREEMAN, J., delivered the opinion of the Court.

Henry Masson, *et als., v.* P. H. Anderson and B. J. Tarver.

In September, 1865, P. H. Anderson made a deed of trust, conveying a large amount of personal property and choses in action, together with a valuable tract of land, to B. J. Tarver, as trustee, to secure the payment of a heavy indebtedness then existing against him, and specified in the deed, the property to be sold and trust closed out by the trustee on September 10, 1867, if debts were not paid. The particular terms and provisions of this deed need not to be set out at present.

Henry Masson filed his bill, attacking this conveyance, on the 17th March, 1866, praying for an injunction, restraining Anderson and Tarver from selling or disposing of the property or monies received from sales or collections on notes and judgments transferred by the deed of trust.

The grounds on which the deed was attacked, and sought to be declared void, were, that it was fraudulent in fact and in law, being made with the intent to hinder and delay the creditors of Anderson in the collection of their debts. Several specifications were made as evidences of fraud in law, such as, that the amount of property conveyed was largely in excess of the debts secured, the time the deed had to run, to-wit, two years, the retaining possession of the property for this period, and that a portion of the property conveyed, and the possession thus retained, was such as was consumable in its use, etc.

This bill is filed against P. H. Anderson, the maker of the deed, and B. J. Tarver (the party named

in the deed as trustee), alone, making none of the beneficiaries in the deed parties.

It further alleged, that Tarver had not accepted the trust, by qualifying and giving bond as required by law, and had given no attention to the property, but the same had remained in possession of Anderson. It may be here stated, that the fact is, as appears from the record, that Tarver had not accepted the trust, nor has he ever done so up to the present time, as far as we can see, and, therefore, does not in any way represent the trust fund. Therefore, this bill is filed against but one party having any interest in the fund under the deed, and he, but what may be said to be only an incidental interest, not a direct one, at any rate, only interested to have his purposes carried out in favor of his preferred creditors, but, in no legal sense the representative of their legal or equitable rights under the deed.

To this bill, Anderson and Tarver file answers. Anderson denies the fraud in all aspects, as charged, sets up an assumed equity, growing out of a deed of trust made by his principal, the debt of Masson being a security debt, as he alleges, and then goes on to add other matters, and asks that the answer may be treated as a cross-bill. In this answer he gives his reasons for making the deed of trust, among others, that he had lost a large amount of property by the ravages of the war, was largely indebted, and desired to secure his individual creditors in preference to his security debts, his home debts in preference to his foreign debts.

He then adds, that no sufficient decree can be made in the case, as he is advised, because of the fact that the beneficiaries in the deed are not parties to Masson's bill, and are not represented even by a trustee. He asks that Masson, and other parties not necessary to be noticed, be made parties, and then, that the beneficiaries in the deed of trust by name be made parties to this (so-called) cross-bill and answer, and say whether they accept the benefits of the deed of trust, and that all creditors thus secured be required, by publication, to come forward and answer and file their claims, and that the Court appoint Tarver, or some other suitable person, to take charge of the property, sell the same in accordance with the terms of the trust, have an account of the debts, and general settlement of the trust. This answer was filed January 4, 1867. Jo. Mottley, and M. W. Settle, Executor, answer this cross-bill, accepting the benefits of the deed of trust, and ask that it be executed, and say, they have no knowledge of any fraud in any way, in making the deed of trust.

Masson answers this cross-bill, confining his answer to the matters alleged in reference to an equity claimed in the cross-bill, growing out of a deed of trust made by C. Anderson, the alleged principal of P. H. Anderson.

R. C. Sanders, Executor of John Reeves, one of the beneficiaries, also answers the cross-bill, and says, in substance, that while neither he nor his testator participated in any fraud in the matter, and when he

first heard of the deed he was willing to accept it, and was willing then to accept the deed and wait the winding up of the trust, provided the same is a good *bona fide* conveyance, without fraud.

We need not discuss or decide the effect of the contradictory and inconsistent positions assumed in this answer, in other portions of it, at present, if at all, because, by a consent decree, made April 22, 1868, it is agreed, "that if the trust deed is declared valid, then this claim is to be paid out of the funds under the trust deed in the order therein provided; and if the trust deed is declared void, and set aside, then Saunder's claim shall be paid in the order of the adjustment of equities, liens and priorities which might be afterwards adjudged and decreed by the Court." So that the claim is to be paid in any event, and its further notice will depend upon the determination of the question of the validity of the deed of trust.

But to proceed, F. H. Gordon filed his bill to secure a judgment which he had obtained against Anderson, for upwards of $20,000, said bill filed 2d July, 1866. This bill substantially attacks the deed of trust for the same causes alleged in the bill of Masson. This bill, like Masson's, makes only Tarver and P. H. Anderson, the maker of the deed, parties, leaving out entirely the beneficiaries in the deed, but an attachment was prayed for, and was levied on the property under it.

Samuel T. Mottley and the Planters Bank filed attachment bills jointly, on the 24th October, 1867,

attacking the validity of the deed of trust, on grounds substantially the same as those found in the other bills mentioned. The debt of Mottley was, it seems, one provided for in the deed of trust, under the description of the Settle debt.

Samuel Watson, as trustee of the Bank of Tennessee, filed his bill on the 6th of August, 1867, attacking the deed of trust as in the other bills, seeking to enforce the collection of a large debt assumed to be due the bank.

Both of these bills are filed alone, against Tarver and P. H. Anderson, as in the former cases, not noticing the beneficiaries.

After these proceedings, on the 13th of August, 1867, Aust, Harris, Tarver, as Executor of John K. Howard, and all the creditors secured in the deed of trust by name, except Settle, Saunders, and Joseph Mottley, filed a bill in their own behalf, and all the creditors of P. H. Anderson, asking that the property be attached, thus placing it in the custody of the Court.

They state, among other things necessary to be noticed here, that the conveyance was duly registered, but that Tarver had never accepted the trust, and there was no person authorized to act in the execution of the trust deed, if deemed valid in law, and the same would expire by limitation on the —— day of September, 1867," that is, the period for the sale under it would arrive.

In reference to this aspect of the case, they pray that the Clerk and Master of the Court be appointed

trustee, to execute and carry out the trust if the same be deemed valid, or to sell the land under the decree of the Court, if it be not governed by the trust deed, and the attachment is asked to prevent waste, removal, or misapplication. They also ask to file · this as a cross-bill to the bill of Gordon and Masson. At the head of the bill, however, it is denominated an original bill, and consolidated bill, as we construe the letters there found. However, the title does not give any special character to the paper.

This bill is filed against P. H. Anderson, Frank H. Gordon and Henry Masson, the last of whom, being, as is stated, a non-resident, and also against Garrettson, Coffee, Shields, and others of Warren County, who, we take it, are parties, owing debts assigned in the deed of trust, and are made parties in order to reach this fund. It is proper to say here, that the bill of Mottley and Planters Bank, and of Samuel Watson, trustee, as far as we can see, have never been answered, except by the executors of P. H. Anderson and guardian *ad litem* of his heirs, and Tarver. As Tarver is not trustee, nor necessary party, this, perhaps, is not important to the determination of such questions as are to be considered at present. In addition to this, however, as presenting more of difficulty in seeing what· issues are before us for decision in this record, the bill which we have alluded to above, of Aust, Harris, Tarver, executor, and the secured creditors, has never been answered by anybody.

We find the following, apparently an extract from the rule docket, in the record: "All the bills taken for confessed as to all the defendants who did not answer, on motion of complainants' solicitors, April 16, 1868, signed by H. Y. Riddle, Clerk and Master." We are somewhat at a loss how to construe this entry, or whether to give it any effect at all, but as the parties seem to have treated it as being a regular order *pro confesso,* in all the cases, we will assume this to be the effect of it, and endeavor, upon this assumption, to ascertain, if possible, the rights of the parties, and the issues raised upon this assumption.

There is much confusion in getting at the issues really presented in the case. The confusion seems to have arisen in a large degree, if not entirely, from a misconstruction, or a misunderstanding of the effect of consolidating the various causes, and hearing them together as one cause. It seems to have been understood, that by consolidation of the causes, they were made but one cause, so that the pleadings in any and all the cases, became part and parcel, the one of the other, and issues raised in the first bills filed, for instance, of Masson, Gordon, etc., were to have, or could have effect, and be considered as issues in all the other cases, and bear upon their result. We have, in at least three cases, endeavored to correct the loose impressions on this question. We have held that an order of consolidation simply has no other effect than to hear the cases thus consolidated at the same time, but that the issues remain precisely on the pleadings

as they were before, and between the same parties, and are to be determined exactly as if the cases had been heard separately. (See manuscript cases.) While there may occasionally arise a case where it may be convenient to hear cases together, as for the adjustment of priorities in several attachment bills against the same property or funds, and the proper appropriation of the fund between the parties having liens on the same; yet there can be but few cases where such practice is of any advantage, and as confusing and mixing separate and distinct claims, by combining, as in this case, about five different original bills, with two or three cross-bills, in one record, giving Courts great labor and annoyance in disentangling the case, and arriving at the issues between the respective parties to the different bills.   The practice is one subject to most serious objection, and one not only not to be encouraged, but to be reprobated, and is earnestly · disapproved.

But to return to the main features of the case. Assuming, as we have done, that the order we have cited takes all the bills for confessed in which no answers have been filed, then how do the parties stand before us, and what is the effect of this view of the position of the cases?

1st. As to the bill of Masson, filed against P. H. Anderson and Tarver, attacking the deed of trust, and enjoining them from disposing of the property.· This bill was answered by the two defendants to it, it is true, but the issues presented and made between the

parties to it, could not, by possibility, affect the real merits of the matter sought to be contested. The beneficiaries, the parties having the only real interest in the question in a Court of Equity, were not brought before the Court; the bill not filed against them; no relief sought against them. Therefore, nothing that might be decreed on that bill, as it appears in this record, could, in the slightest degree, affect these rights; no liens sought to be fixed by that bill, nor other advantage could be obtained by it, as against these beneficiaries, nor were they called on in any way to notice a litigation between parties, the effect of which could in no way affect their rights. Anderson, it is true, filed his answer, which he seeks to make a cross-bill against the beneficiaries, but this could not make the beneficiaries defendants to the original bill, so as to entitle the complainant in that bill to a decree against them, as we have held at the present term, in the case of *Odom, et als., v. P. C. Talley,* and *Tally v. Jetton and Fisher,* 2 Baxter, 446.

Nor was this the proper subject of a cross-bill, in an answer under §4323 of the Code, which allows "the defendant, by proper allegations, to file his answer as a cross-bill, and require a discovery from the 'complainant," which evidently gives only the right to file such an answer as a cross-bill against the complainant, whose bill he answers, or, at most, some other party to the case, and not against third parties, not complainants or parties in the original suit. So we held in the above case, and we are satisfied with the correctness of that

holding.    The same remarks apply to the bill of Gordon, and for the same reasons.

As to the joint bill of Mottley and the Planters' Bank, and the bill of Watson, trustee, no answer or defence having been put into these bills by any party who had an interest under the deed of trust, assuming that they were taken for confessed by the order cited, yet admitting all their allegations, as if by an answer of Tarver and P. H. Anderson, still this would entitle the complainants in those bills to no relief whatever against the beneficiaries under the deed, they not being parties to the bill.

It follows, therefore, that on these bills, as they stand in the record, the parties have secured no rights whatever as against the beneficiaries in the deed of trust, and can take no advantage by reason of them as against the parties claiming to be secured by said deed.

It is proper to say, that we find nothing in the orders or decrees in this case to relieve the parties from this result.    The order consolidating the causes provides that they shall be heard together as one cause, but this decree is not to effect in any wise the equities and priorities of the parties, and so, in the decree consenting to a sale of the property, the same provision is substantially made, reserving the rights of the attacking parties, and also the creditors under the trust deed.

We come now to the effect of the bill of Aust, Harris, Tarver, executor, and the other creditors under

the deed of trust, and will endeavor to settle the rights of the parties under this aspect of the case.

It will be seen, as heretofore stated, that Masson and Gordon, two only of the creditors, are made parties to this bill, which is, in fact, though variously named, an original bill, presenting, by its allegations, some very equivocal aspects, leaving us, at the first reading of it, uncertain as to what its real scope and purpose is; presenting much of difficulty in determining what relief the parties to it would be entitled to, assuming it to have been taken for confessed, and thus all its allegations well pleaded, in effect admitted. This bill is not answered at all, and under the order cited, must be taken as confessed. The question then is, taking its allegations of fact as true, to what relief were the parties complainant entitled under it.

The principle is a sound one in its proper application, that two opposite and inconsistent claims to the same property, or opposite and inconsistent rights antagonistic to each other, cannot be affirmatively set up and maintained in the same bill; as that a will is invalid, and at the same time claim a benefit on the assumption of its invalidity. See *Shields* v. *Barrow*, 17 How., 137; Danl. Ch. Pr., 384–5. Nor can this be done in an amended bill. See *Coleman* v. *Pinkard*, 2 Hum., 191. The case in 2 Hum. was this: M. P. Pinkard conveyed negroes to his three children, and, afterwards, became insolvent. Two of the children died, after which M. P. Pinkard sold one of the negroes. Coleman administered on the estate of the

two children, and filed his original bill as administrator of these children, claiming, as their representative, that their share went to the father as distributee, and asking that it be subjected to his debts. He then filed, in the progress of the cause, an amended bill, in which he alleged, that the deed of gift by the father to his children was fraudulent and void, and the negroes belonged to the father, and asked that they be subjected to his debt. It was held that the latter claim was inconsistent with the former, maintaining affirmatively, as it did, a proposition of fact antagonistic to the first bill, one which could not be sustained by proof without overturning and disproving the allegations of the original bill. This was all proper, and the case well decided. On careful examination of the bill before us, we do not find this distinct antagonism in its statements.

It alleges substantially, that they are creditors of Anderson, by judgments, with executions returned *nulla bona*. In another part of the bill, they say, that in some instances they have had *fi. fa's.* levied on the land, and in others have had their judgments registered. But, on the other hand, they have been provided for and attempted to be made secure by the deed of trust, and that they were and are content to accept the provision thus made, under the assurance that the deed was good and valid in law and in fact. They then state the pendency of the suits of Masson and Gordon, seeking, as they are advised, to set aside the deed as fraudulent in law and in fact; but these are but in-

cidental statements as to the situation of the property. The leading purpose of the bill is to have a trustee appointed, if necessary, to execute the trust; to clear up the title in order to a proper sale of the property and appropriation of the same, and while they ask to have liens, levies and rights, under all the facts, perfected, and a general account of the indebtedness chargeable on the fund, they evidently go on the general assumption of the existence of the trust, and its enforcement for their benefit. The bill is exceedingly loosely drawn, without a very definite purpose of any kind on its face, further than that a general settlement of the rights of parties as to this fund was desired, the allegations of fact, however, presenting but little which could serve to eliminate or put in issue any question suggested as desirable to settle. However, after carefully examining its charges, we conclude the bill does not seek affirmatively to maintain antagonistic propositions of fact, but may fairly be construed to seek, first, the enforcement of the trust for their benefit, and if relief failed for any cause, then the benefit of advantages assumed by levies, and registration of judgments. The abandonment or waiver of a right important to parties cannot be made out by uncertain implication, but ought clearly to appear. To constitute such a waiver of a benefit, there must be a clear, unequivocal, and decisive act of the party, an act which shows a determination not to have the benefit intended. *Gentry, et als.,* v. *Gentry,* 1 Sneed, 87; Heisk. Digest, p. 1, cases cited.

We need but add, that there is no such abandonment to be found in the general and equivocal positions of the bill before us, nor is such purpose shown under the rule by the facts stated, taken in connection with all the other facts connected with them in the same bill. We need not discuss the question as to whether Masson and Gordon, not having answered the bill, it being taken for confessed as to them, are in condition to make this question. Certainly, Watson, Mottley and the Planters' Bank are in no condition to raise the question, as they are not even parties to the bill in any way.

The result, without further elaboration of the question, is, that the complainants in the various bills filed, attacking the deed of trust, have obtained no lien as against the beneficiaries under the deed of trust; have made no issue as between themselves and said beneficiaries raising the question of the validity of said deed, and to decide on that question as between P. H. Anderson, or his representatives, and Tarver, in the form presented would be a fruitless decree, on which no relief could be given, the real parties to be affected not having been impleaded at all as to the questions raised.

The Chancellor's decree on these bills, declaring the deed fraudulent in fact and in law, must be reversed, and these bills dismissed, so far as this question is concerned. In fact, as to one ground on which the Chancellor's decree rests, it is erroneous on his own assumption, for he declares the deed fraudulent in fact,

20—vol. 3.

and void, although he finds the beneficiaries did not participate in the fraudulent purpose, or make themselves parties to it.

As to the bill of Aust, Harris, and the other secured creditors under the deed of trust, they are entitled to have the trust enforced for their benefit, and the proceeds of the property sold divided among them. Samuel T. Mottley, having disaffirmed the deed of trust by filing his bill, charging the same to be fraudulent and void, has thereby excluded himself from the benefit of the trust. He has chosen to disclaim it, and must stand by his election. Saunders would have been as effectually excluded, perhaps, by his answer to the cross-bill, had it not been for the consent decree to which we have alluded. As it appears that Joseph Mottley accepted the deed of trust, but is not a party to the bill to have the property sold, he can be permitted to come into the case by petition, and have his claim secured by the deed of trust allowed, on remanding the case. The creditors secured by the deed of trust will be paid as provided therein, except Samuel T. Mottley.

While the bills of Masson, Gordon, Planters' Bank, Mottley and Watson, assignee, are dismissed as to any relief against the deed of trust, they may be retained for the purpose of reaching any surplus of the fund which otherwise would go to Anderson's estate, the representatives of that estate being parties to their bills, and before the Court, and will come in, in the order of their filing, in the Court below.

The Chancellor's decree as to the $1,300 note is erroneous. He refused to allow this note, because given for Confederate money. This was wrong, but as we see, from the exhibits filed with his bill, that P. H. Anderson was endorser only on said note; that it was given in 1862, due ninety days after date, and not presented for payment, or protested, and notice given of failure to pay, until April, 1866, and no excuse for this failure given, it is clear P. H. Anderson is not liable on his endorsement; therefore a reversal would be fruitless on this point, and this claim will be disallowed.

It is proper to say, in conclusion, that we have carefully examined the proof in this case, and find no evidence of fraud, in fact, that could possibly affect the validity of this deed of trust; nor do we think the deed is fraudulent in law on its face. The amount of property is not so disproportionate to the debts as to enable a Court to say it is evidence of fraud. The time given is not unreasonable, being a few days less than two years. The property conveyed is not necessarily consumable in its use, the property being described in the deed as follows: " All my cattle, including milk stock, sheep, hogs, stock, pork hogs, sixteen head of horses, mules and colts." This is not a stronger case than *Ross* v. *Young, et als.*, 5 Sneed, 629, which was a conveyance of " ten head of young cattle, twenty head of hogs, thirteen old sheep, two bee palaces, and two kegs of vinegar."

We do not think the principle of raising a fraudu-

lent intent from such a conveyance of property, coupled with retention of possession by the maker of the deed, until default of payment, should be extended beyond what the above case has laid down. There is no stipulation in the deed for the use. of the property (that is, its consumption) for the benefit of the maker of the deed, but only one, that "the crops conveyed may be used in getting the stock ready for market." This is for the benefit of the trust fund, and not for the maker of it.

In addition to this, the provision for retaining the possession of the property until expiration of the trust, is qualified by the stipulation, "unless the trustee may deem it best, for the interest of the trust," to take possession.

This leaves the beneficiaries ample protection against its improper use. We do not deem it necessary to say more in this opinion.

A decree will be drawn here in accordance with this opinion, and the case remanded, to be further proceeded in, for winding up the trust and collection of funds, and final appropriation to the payment of debts.

The costs of the bills filed attacking the deed of trust will be paid by complainants in those bills. The costs of the Aust, Harris, and secured creditors bill and incident to the administration of the fund, will be paid out of the fund.