IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 17, 2024 Session

FILED
NOV 26 2024
Clerk of the Appellate Courts
REc'd By _____

## KEVIN W. ADDIS ET AL. v. EAGLE CDI, INC.

Appeal from the Chancery Court for Knox County
No. 202505-1      John F. Weaver, Chancellor

_____

### No. E2023-01190-COA-R3-CV
_____

In this contract dispute, the trial court dismissed the petitioners' claims of fraudulent inducement and misrepresentation predicated on a lack of subject matter jurisdiction. The trial court also awarded attorney's fees to the defendant. The petitioners have appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

F. Clinton Little, Knoxville, Tennessee, and Matthew B. Evans, Morristown, Tennessee, for the appellants, Kevin W. Addis and Barbara E. Addis.

Andrew S. Roskind and Kiel A. Kovalcik, Franklin, Tennessee, for the appellee, Eagle CDI, Inc.[1]

## OPINION

### I. Factual and Procedural History

This appeal arises from litigation involving the petitioners, Kevin W. Addis and Barbara E. Addis, and the respondent, Eagle CDI, Inc. ("Eagle"), a construction company. In 2018, the Addises and Eagle executed a construction contract ("the Contract") for the

---

[1] After briefing was completed in this matter, Mr. Roskind filed a motion requesting that Mr. Kovalcik be allowed to withdraw as counsel of record for Eagle CDI, Inc. This Court granted the motion on September 18, 2024, and the appeal proceeded with Mr. Roskind solely representing Eagle CDI, Inc.

construction of the Addises' new home. The Contract contained the following arbitration provision:

> Any disputes under this contract shall be submitted to arbitration with a single arbiter under the rules of the American Arbitration Association. The arbiter need not be an attorney or professional adjudicator and not employed or otherwise associated with either party, but must be a person with experience and training in construction engineering and construction contracting and architecture. OWNERS will pay any and all fees necessary.

The Contract also contained a separate provision stating: "The Laws of the State of TN shall govern this Contract."

In June 2019, Eagle initiated arbitration proceedings involving the Addises, asserting that the Addises owed Eagle an outstanding balance from the construction of their home. The Addises filed an answering statement in the arbitration proceedings, stating that they were "proceed[ing] hereafter under protest." In 2020, the Addises filed a petition for declaratory judgment and injunctive relief against Eagle in the Knox County Chancery Court ("trial court"). In that action, the Addises sought a declaration that the Contract "had been procured by fraud." After the Addises filed their petition, the trial court issued a temporary injunction staying the arbitration proceedings. However, in May 2020, the Addises nonsuited their claims for declaratory and injunctive relief. They subsequently proceeded with arbitration but did not raise a specific claim of fraudulent inducement.

During the arbitration proceedings, however, the Addises asserted counterclaims averring that Eagle had committed unfair and deceptive acts pursuant to the Tennessee Consumer Protection Act ("TCPA"). Specifically, the Addises claimed that Eagle had violated Tennessee Code Annotated § 47-18-104 (7) ("Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another") and (15) ("Failing to disclose that a charge for the servicing of any goods in whole or in part is based on a predetermined rate or charge, or guarantee or warranty, instead of the value of the services actually performed") (West September 30, 2019, to current). The Addises later withdrew their counterclaim predicated on Tennessee Code Annotated § 47-18-104 (15). The arbitration proceedings resulted in an award in favor of Eagle, and the arbitrator denied the Addises' counterclaim of misrepresentation based on Tennessee Code Annotated § 47-18-104 (7). The Addises filed an answer and an application to vacate or modify the arbitration award.

On May 19, 2021, before the arbitration award was confirmed, the Addises commenced the instant action by filing a second petition for declaratory judgment and injunctive relief in the trial court against Eagle.[2] Eagle filed a motion to strike, averring

---

[2] The record does not disclose whether the arbitration award has ever been confirmed.

that the petition was defective. In response, the Addises amended their declaratory judgment petition on October 4, 2021. In this amended petition, the Addises alleged that Eagle had misrepresented the cost of construction of the home and had fraudulently induced the Addises to sign the Contract, knowing that the budget stated in the Contract was inaccurate. The Addises further averred that the arbitration clause contained in the Contract was unenforceable.

At a pretrial hearing, the trial court *sua sponte* raised the question of whether it had subject matter jurisdiction over the Addises' claims because the Contract contained an arbitration provision. The court therefore directed the parties to submit briefs regarding the issue of subject matter jurisdiction. In response, Eagle filed a motion to dismiss on September 22, 2022, arguing that the trial court lacked subject matter jurisdiction based on the existence of a valid and enforceable arbitration provision in the Contract. Eagle urged that fraud-related claims were arbitrable under the Federal Arbitration Act ("FAA"). Eagle further asserted that the Addises had consented to arbitration of any fraud-related claims by stating counterclaims against Eagle alleging violations of the TCPA that were based on fraud and misrepresentation during the prior arbitration proceedings.

On September 23, 2022, the Addises filed their own brief regarding subject matter jurisdiction. The Addises asserted that the Contract's arbitration clause, when read in conjunction with the Contract's choice-of-law provision, demonstrated that the parties had agreed to adopt and apply Tennessee law, which would include the Tennessee Uniform Arbitration Act, and had also agreed to adopt the rules of the American Arbitration Association ("AAA"). According to the Addises, pursuant to the Tennessee Supreme Court's guidance provided in *Frizzell Constr. Co. v. Gatlinburg, LLC*, 9 S.W.3d 79, 86 (Tenn. 1999), a claim of fraudulent inducement should be decided by the trial court rather than in arbitration under the circumstances of this case. On October 12, 2022, the Addises filed a response to Eagle's motion to dismiss, asserting that they had not raised any fraudulent inducement counterclaim or other contract formation issues during the arbitration proceedings and were not precluded from doing so in the trial court action.

On January 4, 2023, the trial court entered an order dismissing the Addises' petition for lack of subject matter jurisdiction. In the attached and incorporated transcript of the court's oral ruling, the court found that the Contract contained the above-referenced arbitration and choice-of-law provisions. The court noted that despite the choice-of-law provision, the language of the Contract provided that "all disputes shall be submitted to arbitration under the rules of the American Arbitration Association." The trial court relied on this Court's opinion in *Mid-S. Maint. Inc. v. Paychex Inc.*, No. W2014-02329-COA-R3-CV, 2015 WL 4880855, at *13 (Tenn. Ct. App. Aug. 14, 2015), wherein this Court summarized a principle of federal case law that "by incorporating the AAA Rules into an arbitration agreement, the parties clearly and unmistakably manifested an intent to allow the arbitrator to resolve all questions of arbitrability" (citing multiple federal cases). The *Paychex* Court concluded:

- 3 -

Here, the arbitration clause contained in the parties' contracts clearly indicates that the arbitration shall be conducted "in accordance with" the AAA Rules. There is no dispute that the applicable rules provide that issues of arbitrability, including questions regarding the "existence, scope, or validity of the arbitration agreement" are to be determined by the arbitrator.

*Id.*

The trial court distinguished the instant action from the Tennessee Supreme Court's opinion in *Frizzell*, 9 S.W.3d at 86, stating that the Supreme Court had held in *Frizzell* that "because the parties did not intend to arbitrate contract formation issues, the contract formation issues would go to the courts." The trial court found that in the instant action, "the parties intended to arbitrate under AAA rules, and under those rules, contract formation issues go to arbitration."

As to the issue of the enforceability of the arbitration provision, the trial court found the provision enforceable because the provision adopted the AAA rules, and the court found "nothing vague or ambiguous about the rules or the arbitration provision." The trial court also determined that the Contract's provision concerning payment of legal fees did not render the arbitration provision ambiguous. The trial court therefore dismissed the Addises' claims for lack of subject matter jurisdiction.

Following the trial court's dismissal of the Addises' claims, Eagle filed a motion seeking an award of attorney's fees. The Addises filed a response in opposition to an award of fees. On February 3, 2023, the Addises filed a motion to alter or amend and/or for additional findings. In this motion, the Addises contended that the trial court had based its dismissal in material part upon an erroneous finding that the contract at issue in *Frizzell* did not contain a provision expressly adopting the AAA rules when the Contract herein did. The Addises argued that because the contract at issue in *Frizzell* did contain such a provision, as demonstrated in the earlier opinion from this Court, *see Frizzell Const. Co. v. Gatlinburg, LLC*, No. 03A01-9805-CH-00161, 1998 WL 761840, at *1 (Tenn. Ct. App. Nov. 2, 1998), the instant action was not distinguishable from *Frizzell*.

The trial court conducted a hearing on July 6, 2023, wherein the court considered both Eagle's motion seeking attorney's fees and the Addises' motion to alter or amend and/or for additional findings. In a resultant order entered on July 21, 2023, the court denied the Addises' motion to alter or amend, explaining in its incorporated bench ruling:

The plaintiffs in the motion to alter or amend . . . state that this Court indicated that it based its ruling upon a finding that the contract at issue in the case of Frizzell Construction Company vs. Gatlinburg did not contain a

- 4 -

provision whereby the parties adopted the American Arbitration Association rules. There is no such explicit finding by this Court.

The Tennessee Supreme Court's opinion in Frizzell, as correctly stated by the plaintiffs, was silent with regard to whether the parties' contract adopted the AAA rules. And in that regard, even if the AAA rules were in the contract in Frizzell, the case would be like that of Hubert vs. Turnberry, [No. M2005-00955-COA-R3-CV, 2006 WL 2843449, at *7 (Tenn. Ct. App. Oct. 4, 2006)], where the AAA rules appear to have been in the contract, but their effect upon the parties' intent does not appear to have been raised or addressed.

* * *

The effect of the AAA rules upon the parties' intent was not addressed or raised in any way by the court of appeals or the Tennessee Supreme Court. The court of appeals opinion appears to be about one page long. And it was not one of the issues before the court of appeals.

The intent of the parties, this Court believes, is especially obvious in this case. Where not only did they adopt the AAA rules, but here they've already been to arbitration after having nonsuited a prior action filed by them upon their claim of fraudulent inducement, which was ongoing.

So, respectfully, the plaintiffs' motion to alter or amend will be denied, the cost taxed to the plaintiffs.

On July 21, 2023, the trial court entered a final judgment granting an award of reasonable attorney's fees and court reporter fees to Eagle in the total amount of $51,846.04. The Addises timely appealed.

## II. Issues Presented

The Addises have presented four issues for our review, which we have restated and combined into one overarching issue:

Whether the trial court erred by determining that it lacked subject matter jurisdiction to adjudicate the Addises' claims.

## III. Standard of Review

As our Supreme Court has explained concerning review of a motion to dismiss for lack of subject matter jurisdiction:

A motion to dismiss for lack of subject matter jurisdiction falls under Tennessee Rule of Civil Procedure 12.02(1). The concept of subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it. *See Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Standard Sur. & Casualty Co. v. Sloan*, 180 Tenn. 220, 230, 173 S.W.2d 436, 440 (1943). Subject matter jurisdiction involves the nature of the cause of action and the relief sought, *see Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn.1994), and can only be conferred on a court by constitutional or legislative act. *See Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977); *Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 734 (Tenn. Ct. App. 1989). Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

*Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

To the extent that we are required to review the trial court's interpretation of the Contract, our Supreme Court has further stated:

Under Tennessee law, the law governing this contract, the "cardinal rule [in interpreting contracts] . . . is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). Courts may determine the intention of the parties "by a fair construction of the terms and provisions of the contract, by the subject matter to which it has reference, by the circumstances of the particular transaction giving rise to the question, and by the construction placed on the agreement by the parties in carrying out its terms." *Penske Truck Leasing Co. v. Huddleston*, 795 S.W.2d 669, 671 (Tenn. 1990). No single clause in a contract is to be viewed in isolation; rather, the contract is to be "viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another." *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985).

*Frizzell*, 9 S.W.3d 79, 85.

## IV. Subject Matter Jurisdiction

The Addises assert that the trial court erred by determining that it lacked subject matter jurisdiction to adjudicate their claim of fraudulent inducement. They posit that inasmuch as the Contract specified that Tennessee law would control, Tennessee law

dictates that questions of contract formation should be decided by the courts rather than by arbitration, predicated on our Supreme Court's ruling in *Frizzell*. *See* 9 S.W.3d at 86. Eagle contends that the Addises waived any right to have their claim of fraudulent inducement adjudicated by the courts when they voluntarily dismissed their earlier fraudulent inducement action in the trial court and proceeded with arbitration.

In examining the case law relevant to this issue, we first observe that *Frizzell* is a seminal Tennessee Supreme Court opinion addressing the issue of whether contract formation issues should be sent to arbitration and affirming this Court's decision in the same case. *See id.* (affirming *Frizzell*, 1998 WL 761840, at *1). In *Frizzell*, the parties' construction contract contained a provision stating: "This Agreement shall be governed by the law of the place where the project is located." *See* 1998 WL 761840, at *1. There was no dispute that the project was located in Tennessee. *See id.* The parties' contract also contained the following arbitration provision:

> All claims, disputes and other matters in questions arising out of, or relating to, this Agreement . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

*Id.* Accordingly, it is clear that this arbitration clause specifically adopted the AAA rules.

When a contract dispute arose between the *Frizzell* parties, the plaintiff contractor filed an action in chancery court. *Id.* The defendant filed a counterclaim, and the contractor submitted a demand for arbitration. *Id.* The defendant opposed arbitration and amended its counterclaim to include an allegation that the contractor had fraudulently induced the defendant to enter into the contract. *Id.* The *Frizzell* trial court determined that it maintained subject matter jurisdiction to adjudicate that contract formation issue, and this Court agreed, citing prior precedent stating that if a "contract was procured by fraud, then, unless the defrauded party elects to affirm it, there is absolutely no contract, nothing to be arbitrated." *Id.* at *2 (citing *City of Blaine v. John Coleman Hayes & Assoc.*, 818 S.W.2d 33, 38 (Tenn. Ct. App. 1991)).

In upholding this Court's decision in *Frizzell*, our Supreme Court explained:

> By stating that the contract is to be governed by Tennessee law, the parties have indicated their intention to arbitrate all disputes "arising out of or relating to" their agreement—but only to the extent allowed by Tennessee law. Interpreting each clause in light of the other, we read the arbitration clause to more accurately state, "In accordance with Tennessee law, all claims, disputes, and other matters in questions arising out of, or relating to,

this Agreement . . . shall be decided by arbitration . . . ." Therefore, because Tennessee law contemplates judicial resolution of contract formation issues, we conclude that the parties have indicated their intention not to submit such issues to arbitration.

*Frizzell*, 9 S.W.3d at 85. By footnote, the High Court cited *City of Blaine* for the rule that a fraudulent inducement claim "could not be submitted to arbitration under the Tennessee Uniform Arbitration Act." *Id.* at 85 n.10.

Subsequently, in *Hubert v. Turnberry Homes*, No. M2005-00955-COA-R3-CV, 2006 WL 2843449, at *7 (Tenn. Ct. App. Oct. 4, 2006), a case with facts similar to *Frizzell* and the present matter, this Court likewise held that a claim of fraudulent inducement was not subject to arbitration. In *Hubert*, one party sought to litigate contract formation claims while the other party sought to compel arbitration. *Id.* at *1. The contract at issue contained both an arbitration clause expressly adopting the AAA rules and a choice-of-law provision stating: "All rights and obligations between the parties arising out of or relating to the Property and this Agreement shall be governed by the laws of the state of Tennessee." *Id.* at *1 n.2. Predicated on the Supreme Court's ruling in *Frizzell*, this Court determined that because the parties' contract provided that Tennessee law would govern, claims of fraudulent inducement were not subject to arbitration and had to be adjudicated by the courts. *Id.* at *7.

By contrast, in a later opinion of this Court, *Elliott v. Icon In The Gulch, LLC*, No. M2009-01554-COA-R3-CV, 2010 WL 2025456, at *1 (Tenn. Ct. App. May 19, 2010), the parties had executed a contract that contained both a choice-of-law provision, stating that Tennessee law would govern the contract, and an arbitration provision, stating that the AAA rules would control. In addition, the contract's arbitration provision specifically stated that the parties had agreed that all "disputes concerning the arbitrability of any Claim or the enforceability or scope of this provision shall be subject to the same binding arbitration." *Id.* at *3. The *Elliott* Court determined that this additional language, *inter alia*, "distinguishes this case from *Frizzell* and *Hubert* and compels a contrary result." *Id.* at *4. The Court accordingly reversed the trial court's refusal to compel the parties to arbitrate their fraudulent inducement issue. *Id.*

Following the *Elliott* decision, this Court again recognized that parties can agree to "arbitrate the claim of fraudulent inducement, despite the prohibition under Tennessee law." *See White v. Turnberry Homes, LLC*, No. M2014-01858-COA-R3-CV, 2015 WL 3429764, at *2 (Tenn. Ct. App. May 28, 2015). Determining that the parties had not agreed to arbitrate a claim of fraudulent inducement in their contract, the *White* Court stated: "Like the courts in *Frizzell* and *Hubert*, however, we are disinclined to find that the use of broad arbitration language constitutes a waiver of the right under Tennessee law to have a court consider the issue of fraudulent inducement." *Id.* The Court further explained that "the party claiming waiver has the burden of proving that the party against whom waiver is

asserted has, 'by a course of acts and conduct, or by so neglecting and failing to act, . . . induce[d] a belief that it was [the party's] intention and purpose to waive.'" *Id.* (quoting *Ky Nat'l Ins. Co. v. Gardner*, 6 S.W.3d 493, 499 (Tenn. Ct. App. 1999)). The Court therefore affirmed the trial court's determination that the fraudulent inducement issue should not be submitted to arbitration. *White*, 2015 WL 3429764, at *3.

Similar to the parties in *Frizzell*, *Hubert*, and *White*, the parties herein agreed to arbitrate their claims based on the AAA rules but also agreed that the contract would be governed by Tennessee law. Because Tennessee law provides that issues of contract formation are to be adjudicated by the courts, *see Frizzell*, 9 S.W.3d at 85, the Addises argue that their fraudulent inducement claims should have been decided by the trial court in accordance with those prior decisions. However, Eagle asserts that the Addises have waived their ability to enforce that right, not through the language used in the Contract, but through their act of participating in arbitration.

Eagle's argument also finds support from the *Frizzell*, *Hubert*, and *White* cases. Significantly, our Supreme Court explained in *Frizzell*: "If the parties in this case agreed to arbitrate the claim of fraudulent inducement, then despite such a prohibition under Tennessee law, the claim must be submitted to arbitration." *Id.* at 85. Moreover, in *Hubert*, this Court held that the arbitration of contract formation claims was not mandatory unless the parties "agreed to submit claims of fraudulent inducement to arbitration." *Hubert*, 2006 WL 2843449, at *7 (quoting *Frizzell*, 9 S.W.3d at 85-86). Likewise, in *White*, this Court recognized that parties can agree to "arbitrate the claim of fraudulent inducement, despite the prohibition under Tennessee law." *White*, 2015 WL 3429764, at *2.

We reiterate that in the case at bar, the Addises had originally begun to participate in arbitration under protest before subsequently filing an action alleging fraudulent inducement with the trial court and obtaining an order from that court staying the arbitration proceedings. However, the Addises later voluntarily dismissed their fraudulent inducement action and proceeded with arbitration, which resulted in a finding in Eagle's favor. The question therefore becomes whether the Addises, by their actions, waived their "right under Tennessee law to have a court consider the issue of fraudulent inducement." *See White*, 2015 WL 3429764, at *2.

As this Court has explained regarding waiver:

A waiver is an intentional relinquishment of a known right. *Baird v. Fidelity-Phenix Fire Ins. Co.*, 178 Tenn. 653, 162 S.W.2d 384, 389 (1942). The courts of this state repeatedly have held that, in order to constitute an abandonment or waiver of a legal right,

"there must be a clear, unequivocal, and decisive act of the party showing such a purpose, or acts amounting to an estoppel

- 9 -

on [its] part." *Ross v. Swan*, 7 Lea, [75 Tenn. 463] 468. Or, as stated in *Masson v. Anderson*, 3 Baxt. [62 Tenn. 290] 304: "Abandonment or waiver of a right important to parties cannot be made out by uncertain implication, but ought clearly to appear. To constitute such a waiver of a benefit there must be clear, unequivocal, and decisive acts of the party, an act which shows a determination not to have the benefit intended."

*Charleston, S.C., Mining & Mfg. Co. v. American Agric. Chem. Co.*, 126 Tenn. 18, 150 S.W. 1143, 1146 (1911); *accord Springfield Tobacco Redryers Corp. v. City of Springfield*, 41 Tenn. App. 254, 293 S.W.2d 189, 198 (1956); *Koontz v. Fleming*, 17 Tenn. App. 1, 65 S.W.2d 821, 825 (1933); *see also Stovall of Chattanooga, Inc. v. Cunningham*, 890 S.W.2d 442, 444 (Tenn. App. 1994); *Trice v. Hewgley*, 53 Tenn. App. 259, 381 S.W.2d 589, 595 (1964); *Webb v. Board of Trustees of Webb School*, 38 Tenn. App. 173, 271 S.W.2d 6, 19 (1954).

The law will not presume a waiver, and the party claiming the waiver has the burden of proving it by a preponderance of the evidence. *Koontz*, 65 S.W.2d at 825; *see also Springfield Tobacco Redryers*, 293 S.W.2d at 198. Waiver may be proved by "express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was [the party's] intention and purpose to waive." *Baird v. Fidelity-Phenix Fire Ins. Co.*, 178 Tenn. 653, 162 S.W.2d 384, 389 (1942) (quoting *Farlow v. Ellis*, 81 Mass. 229, 231 (1860)). In order to establish waiver by conduct, the proof must show some "absolute action or inaction inconsistent with the claim or right" waived. *Koontz*, 65 S.W.2d at 825; *accord Stovall*, 890 S.W.2d at 444; *Webb*, 271 S.W.2d at 19.

*Kentucky Nat'l Ins. Co. v. Gardner*, 6 S.W.3d 493, 498-99 (Tenn. Ct. App. 1999).

This Court has previously held that a party had waived its right to have the court adjudicate the question of a contract's validity by voluntarily participating in arbitration proceedings. *See Lee Warehouse Ltd. P'ship v. Jepco Constr. Co.*, E1999-01944-COA-R3-CV, 2000 WL 760747, at *1 (Tenn. Ct. App. June 13, 2000). *Lee Warehouse* similarly involved a construction contract that contained an arbitration clause, and the parties participated in arbitration before the plaintiff filed its action in court. *See id.* at *1. During the arbitration proceedings, the *Lee Warehouse* plaintiff submitted an issue to the arbitrator regarding the defendant's lack of a Tennessee contractor's license and sought damages pursuant to the Tennessee Contractor's Licensing Act but did not raise the issue of whether the lack of license voided the parties' contract. *See id.* The plaintiff later filed an action in court seeking to void the contract due to the defendant's lack of a contractor's license,

- 10 -

and the court dismissed the action, finding that the plaintiff had waived its right to have the court adjudicate the claim because it had participated in arbitration. *See id.* On appeal, this Court affirmed, stating:

> As a general rule, a party waives the right to a judicial determination of an issue where the party has participated in arbitration of the issues without raising any objection. *Arner v. Liberty Mutual Ins. Co.*, 233 A.D.2d 321, 321, 649 N.Y.S.2d 185 (N.Y. App. Div. 1996); *Holk v. Biard*, 920 S.W.2d 803 (Tex. App. 1996); *Victor v. Dean Witter Reynolds, Inc.*, 606 So.2d 681 (Fla. App. 1992); *Russell v. World Famous, Inc.*, 94 Or. App. 748, 767 P.2d 456 (Or. App. 1989).
>
> The plaintiff participated in arbitration, after learning that the defendant did not have a Tennessee contractor's license, and submitted that issue to the arbitrator, requesting that defendant be allowed to recover actual costs pursuant to the Tennessee Contractor's Licensing Act. However, plaintiff did not raise objection that the lack of license voided the contract, thus making arbitration the appropriate venue for resolving the dispute. By participating in the arbitration without objection and submitting the licensing issue, the plaintiff waived his right to subsequently challenge the validity of the contract and the arbitration clause. A party may not take his chances in arbitration and then, if dissatisfied with the results, seek relief in the courts.

*Id.*[3] *See, e.g., CIC Servs., LLC v. Prabhu*, No. W2022-01431-COA-R3-CV, 2023 WL 6060572, at *6 (Tenn. Ct. App. Sept. 18, 2023) (determining that when an individual defendant "intentionally and voluntarily named himself as an individual claimant in the First Arbitration, and voluntarily participated in his individual capacity in both arbitration proceedings," he had waived his ability to object to the attachment of individual liability).

Here, the Addises rely heavily on their initial objection to arbitration as noted in their answering statement filed at the initiation of the arbitration proceedings. However, we find it significant that the Addises were never compelled by the trial court to proceed with arbitration. In fact, when they filed an action with the trial court claiming fraudulent

---

[3] The converse is also true. *See Carolyn B. Beasley Cotton Co. v. Ralph*, 59 S.W.3d 110, 113 (Tenn. Ct. App. 2000) (finding that a party had waived his right to arbitrate his claims by voluntarily participating in the litigation process—filing an answer, participating in discovery, and filing pretrial motions—before invoking the contract's arbitration provision prior to trial); *see also Rebound Care Corp. v. Universal Constructors, Inc.*, No. M1999-00868-COA-R3-CV, 2000 WL 758610, at *1 (Tenn. Ct. App. June 13, 2000) (determining that a genuine issue of material fact existed concerning whether a party had waived his contractual right to arbitration when the party mentioned arbitration as an affirmative defense in his answer but then proceeded to participate in litigation discovery and only sought to compel arbitration after the parties were three years into litigation).

- 11 -

inducement, they were granted a stay of the arbitration proceedings by the trial court and the arbitrator in order to pursue that claim in court. The Addises then voluntarily dismissed that initial court action, choosing instead to proceed with arbitration to completion. They only refiled their fraudulent inducement claims with the trial court after an arbitration decision was reached in favor of Eagle.

Much like the *Lee Warehouse* plaintiff, although the Addises did not raise an issue during arbitration regarding contract formation, they did allege claims of misrepresentation pursuant to the TCPA, thereby placing the issue of fraud into play. *See Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 905 (Tenn. 1999) (stating that the terms, "intentional misrepresentation," "fraudulent misrepresentation," and "fraud," are "synonymous"). Accordingly, we agree with the trial court's conclusion that the Addises, by participating in arbitration to its conclusion and raising the specter of fraud, waived their right to have their fraudulent inducement claim adjudicated by the court. *See Lee Warehouse*, 2000 WL 760747, at *1 ("A party may not take his chances in arbitration and then, if dissatisfied with the results, seek relief in the courts."). We therefore affirm the trial court's determination that it lacked subject matter jurisdiction to adjudicate the Addises' contract formation claims.

## V. Attorney's Fee Award

The Addises argue in the body of their appellate brief that the trial court maintained no authority to award attorney's fees to Eagle after ruling that it lacked subject matter jurisdiction to adjudicate the Addises' contract formation claims. We note that the Addises failed to raise the propriety of the attorney's fee award as an issue in their statement of the issues as required by Tennessee Rule of Appellate Procedure 27(a)(4). *See Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012) ("Appellate review is generally limited to the issues that have been presented for review."); *Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) ("We may consider an issue waived where it is argued in the brief but not designated as an issue."). However, inasmuch as the Addises have asserted that the trial court lacked subject matter jurisdiction to make such an award, we will address the issue. *See Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 667 (Tenn. Ct. App. 2021) ("[I]ssues of subject matter jurisdiction can be raised at any time by the parties or the court *sua sponte*.").

Regarding a trial court's authority to grant an award of attorney's fees in an action wherein the court has determined that it lacks subject matter jurisdiction, our Supreme Court has explained:

> Having concluded that the chancery court properly dismissed Father's action for lack of subject matter jurisdiction, we will next consider whether the chancery court lacked authority to award attorney's fees. . . .

We begin with an obvious proposition— a court has "jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and it must have authority to decide that question in the first instance." *Barry v. State Bar of Cal.*, 2 Cal.5th 318, 212 Cal. Rptr. 3d 124, 386 P.3d 788, 793 (2017) (quoting *Rescue Army v. Mun. Ct.*, 28 Cal.2d 460, 171 P.2d 8, 10-11 (1946)). Even when a case is dismissed for lack of subject matter jurisdiction, the court retains power to award attorney's fees and costs. *Id.* As the United States Supreme Court has explained, requests for attorney's fees are "collateral" and have "a distinct and independent character" from the underlying suit. *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 169, 59 S. Ct. 777, 83 L. Ed. 1184 (1939) (footnote omitted) (citation omitted). Courts should view a request for attorney's fees as an "'independent proceeding supplemental to the original proceeding and not a request for modification of the original decree.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990) (quoting *Sprague*, 307 U.S. at 170, 59 S. Ct. 777); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 136, 112 S. Ct. 1076, 117 L. Ed. 2d 280 (1992); *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 926-27 (7th Cir. 2000); *Devon Energy Prod. Co. v. KCS Res., LLC*, 450 S.W.3d 203, 220 (Tex. App. 2014); *Hous. Auth. of Seattle v. Bin*, 163 Wash. App. 367, 260 P.3d 900, 903 (2011) (citation omitted); *Kalich v. Clark*, 152 Wash. App. 544, 215 P.3d 1049, 1051 (2009). *Cf. J.W. Kelly & Co. v. Conner*, 122 Tenn. 339, 123 S.W. 622, 637 (1909) (dismissing a case for lack of subject matter jurisdiction "and adjudging costs"); *Honeycutt ex rel. Alexander H. v. Honeycutt*, M2015-00645-COA-R3-CV, 2016 WL 3662166, at *1, *5 (Tenn. Ct. App. June 30, 2016) (resolving an outstanding request for attorney's fees even though the order of protection had expired and the appeal was otherwise moot). So, while it is true that a court lacking subject matter jurisdiction has no authority to issue orders on the merits of the case, *J.W. Kelly & Co.*, 123 S.W. at 637, the court retains authority to adjudicate and grant a request for attorney's fees incurred in determining that it lacks jurisdiction.

When adjudicating such an "independent proceeding"—a request for attorney's fees—most states, including Tennessee, apply the "American rule." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citations omitted). Under this principle, "a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." *Id.* (citations omitted).

*New v. Dumitrache*, 604 S.W.3d 1, 20-21 (Tenn. 2020).

In this matter, the parties do not dispute that the Contract contained a provision allowing for the recovery of an award of attorney's fees in a "suit or action . . . instituted in connection with any controversy arising out of this Contract." Pursuant to the Supreme Court's ruling in *New*, we therefore determine that the trial court maintained the authority to award attorney's fees.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's determination that it lacked subject matter jurisdiction to adjudicate the Addises' contract formation claims. We also affirm the trial court's authority to award attorney's fees to Eagle. This case is remanded to the trial court for enforcement of the judgment. Costs on appeal are assessed to the appellants, Kevin W. Addis and Barbara E. Addis.

s/Thomas R. Frierson, II

THOMAS R. FRIERSON, II, JUDGE